**Lorie Brooks GASTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–01–01168–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 29, 2004.

Kyle B. Johnson, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Donald W. Rogers, Jr., Assistant District Attorney, Calvin Hartmann, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Houston, TX, for Appellee.

1. *See* TEX. HEALTH & SAF.CODE ANN. §§ 481.115(a), 481.102(3)(D) (Vernon Supp.

The original panel consisted of Justices TAFT, KEYES, and HIGLEY.

## OPINION ON EN BANC CONSIDERATION

TIM TAFT, Justice.

A jury found appellant, Lorie Brooks Gaston, guilty of possession of cocaine weighing more than one gram and less than four grams.[1] The jury found true the enhancement paragraph alleging a prior conviction for possession of cocaine and assessed appellant's punishment at 15 years in prison. We address whether appellant's trial counsel was ineffective because there was an actual conflict of interest stemming from his dual representation of appellant and her co-defendant and whether trial counsel rendered ineffective assistance of counsel by failing to sufficiently investigate in preparation for, and by offering no mitigating evidence during, the punishment phase. We affirm.

### Facts

In April 2001, three Pasadena Police Officers, including Christopher S. Sadler and Stephen S. Skripka, responded to a "loud noise" complaint at an apartment complex in a high-crime area. The officers found marijuana on a suspicious person in the parking lot and learned from a woman with the suspicious person that the marijuana might have been obtained from one of the apartments in the complex. The woman pointed in the general direction of apartments 113 and 115. Officer Sadler had approached apartment 115 and was knocking on the door when appellant's son opened the door to appellant's apartment, number 113. Officer Sadler turned around and saw appellant sitting in an easy chair.

2004).

The officer said, "Hello, Lorie," and appellant stood up. Appellant's co-defendant, Adrian Ashley Wheatfall, lunged for a black plate that appeared to Officer Sadler to have crack cocaine on it. Officer Sadler entered the apartment and told both of the occupants to sit down. Officer Sadler secured the plate of cocaine and then obtained consent from appellant to search her apartment. During that search, he found numerous pills in appellant's bedroom and purse; none was in a proper prescription container, although a variety of pills in her purse were in a prescription container whose label had been scratched off. Appellant was indicted for the felony offense of possession of one to four grams of cocaine with the intent to deliver, and Wheatfall was indicted for possession of the same cocaine. Appellant was also charged with the misdemeanor offense of possession of some of the pills. Some of the pills were over-the-counter drugs, but others required prescriptions. Although appellant had a prescription for some hydrocodone pills, she had different types of hydrocodone pills than those for which she had prescriptions.

### Ineffective Assistance Based on an Actual Conflict of Interest

In her first point of error, appellant contends that her trial counsel rendered ineffective assistance of counsel because of an actual conflict of interest stemming from his dual representation of Wheatfall and appellant, which representation adversely affected trial counsel's performance. Relying on testimony presented at her motion-for-new-trial hearing, appellant argues that trial counsel presented a joint defense despite appellant's having told trial counsel that the cocaine belonged only to Wheatfall and that appellant was trying to remove herself and her children from an environment in which Wheatfall was selling narcotics out of the apartment. Appellant also argues that trial counsel at punishment asked for the same sentence for both co-defendants, despite the availability of witnesses who would have testified that appellant's role was minor compared to that of Wheatfall.

A criminal defendant has a constitutional right to effective assistance of counsel. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997). Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. *Id.* A defendant can demonstrate a violation of his right to reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Id.*

An actual conflict exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Id.; James v. State*, 763 S.W.2d 776, 778–79 (Tex.Crim. App.1989). An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as "eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Ramirez v. State*, 13 S.W.3d 482, 488 (Tex. App.-Corpus Christi 2000, pet. dism'd). To prove adverse effect, a defendant does not have to show that the conflict of interest changed the outcome of the trial. *Id.* at 487. He need demonstrate only that some plausible defense strategy or tactic might have been pursued, but was not, because of the conflict of interest. *Id.* Once the existence of an actual conflict has been established, prejudice to the appellant must be presumed. *Id.*

## A. Facts Regarding Actual Conflict of Interest

Prior to trial, trial counsel had approached the trial court regarding the issue of potential conflict of interest between appellant and co-defendant Wheatfall. Thereafter, the trial court briefly broached the subject to confirm the impression that there was no conflict created as a result of the prior conference with trial counsel. The trial court inquired of both appellant and Wheatfall whether there was a conflict and whether they were comfortable with proceeding with one attorney representing them both. Both stated that they were comfortable. The trial court specifically asked if trial counsel was going to have to sacrifice the defense of one in order to defend the other, and both defendants answered, "No, ma'am."

Trial counsel proceeded to present a joint defense, primarily attacking the recovery of the cocaine evidence crucial to the prosecution of both defendants by moving to suppress the evidence based on an unlawful seizure. Trial counsel moved immediately after the State had called its first witness to hold a hearing on appellant's motion to suppress evidence. After the hearing, the trial court denied the motion. After the State had rested its case, trial counsel recalled one of the State's witnesses and presented appellant's son as a witness, in order to seize on some inconsistencies in the officers' testimony. Trial counsel then reasserted appellant's motion to suppress based on the further evidence developed, and the trial court again denied the motion to suppress.

Trial counsel's actions throughout trial were consistent with reliance upon this joint theory of defense. For example, during voir dire, trial counsel questioned the venire panel concerning not giving police officers more credibility simply because they are police officers and explained that police officers can make mistakes that cause defendants to be let out of prison. Trial counsel's argument emphasized all of the inconsistencies of the police testimony and inadequacies of the police investigation in arguing that the jury should find the seizure unlawful and not consider the evidence of cocaine in this case. At the end of the guilt/innocence phase, trial counsel moved for an instructed verdict as to appellant's alleged offense of possession with intent to deliver the cocaine. The trial court granted the motion, so that appellant was subject to conviction only for the lesser offense of possession of cocaine, the same offense with which Wheatfall was charged.

At the punishment phase, trial counsel entered pleas of not true to the enhancement allegations on behalf of both defendants. The State had alleged that appellant had one prior conviction and that Wheatfall had two prior convictions. Thus, a finding of true would enhance appellant's punishment range from two to 10 years up to two to 20 years; findings of true on both enhancement paragraphs would enhance Wheatfall's punishment range from two to 10 years up to 25 years to 99 years or life, while a finding of true on only one of Wheatfall's enhancement paragraphs would raise his range of punishment to two to 20 years.

The State introduced a fingerprint examiner to prove that the pen packets were those of appellant and Wheatfall. The State then introduced the pen packets, which showed (1) appellant's initial deferred adjudication for possession of a controlled substance, which was adjudicated on the basis of a second offense of possession of controlled substance, resulting in concurrent sentences of three years in prison and (2) Wheatfall's three prior felony convictions for possession of a controlled substance, for which he was sen-

tenced to two years in prison, delivery of a simulated controlled sentence, for which he was sentenced to five years in prison, and delivery of a controlled substance, for which he was sentenced to 25 years in prison, as well as a prior misdemeanor conviction for failure to identify himself to a peace officer.

During punishment arguments, trial counsel argued for the jury not to give a large sentence to either defendant based on the small amount of cocaine and the absence of aggravating circumstances, such as violence, guns, cooking pots, or evidence that drugs were being sold, like the presence of scales. Trial counsel urged the jury to assess both defendants the same minimal sentence of two to five years in prison by placing their verdicts in a particular location on the two verdict forms. For appellant, trial counsel pointed the jury to the first page of the verdict form, which indicated that the jury found the enhancement paragraph true, but still allowed the jury to assess from two to five years. For Wheatfall, trial counsel pointed to the last page of the verdict form, where the jury could find at least one enhancement paragraph not true, which was necessary in order for the jury to assess from two to five years. If the jury had followed trial counsel's suggestion, both defendants could have been sentenced as second offenders within the same penalty range of two to 20 years in prison.

Therefore, even at the punishment stage, trial counsel presented a joint defense. However, the State argued that the prior convictions had been proved without contradiction, and the jury found the enhancement paragraphs true for both defendants and assessed punishments of 15 years for appellant and 40 years for Wheatfall.

## B. Whether an Actual Conflict Existed

■■■ An actual conflict of interest exists when one defendant stands to gain significantly by counsel's adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing. *See Routier v. State,* 112 S.W.3d 554, 584 (Tex.Crim.App.2003). Appellant's sole argument is that trial counsel was hamstrung by his joint representation of appellant and Wheatfall, thereby precluding trial counsel from demonstrating appellant's lesser role or even mere presence. Appellant's argument is based solely on evidence presented at her motion-for-new-trial hearing, which, as the State points out, the trial court was not obliged to believe, even though the evidence was uncontroverted. *See Messer v. State,* 757 S.W.2d 820, 828 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd).

The evidence introduced at trial equally supported the guilt of both defendants. Wheatfall lunged for the cocaine, but it was in plain view in the apartment of appellant, who was also located close to the cocaine and who was charged with a separate misdemeanor offense for possessing pills. The record demonstrates trial counsel's provision of a joint defense to both appellant and co-defendant Wheatfall. Trial counsel rested his strategy on attempting to suppress the evidence of the crack cocaine found in appellant's apartment. This constituted a joint defense, which, if successful, would have resulted in the acquittal of both co-defendants. We do not know the extent to which this defense might ultimately have succeeded because appellate counsel has abandoned it on appeal, in favor of attacking trial counsel's effectiveness. Nevertheless, trial counsel was consistent throughout the trial, from jury selection through the punishment stage, in pressing a joint defense and

then seeking the same, minimal punishment for both co-defendants.

Like appellant's arguments, the dissenting opinion's arguments are based on the truth of appellant's testimony, at the motion-for-new-trial hearing, that it was Wheatfall's cocaine and that appellant was merely present. The State accurately notes that appellant did not present trial counsel at her motion-for-new-trial hearing to afford him the opportunity to defend against allegations of ineffectiveness or actual conflict. *Cf. Pina v. State,* 127 S.W.3d 68, 73 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (showing that, in a case involving dual representation, Pina's trial counsel testified at motion-for-new-trial hearing that the decision questioned by counsel on appeal was made for purely tactical reasons and pursuant to the co-defendants' understanding and agreement). As the State opines, trial counsel may have advised appellant and Wheatfall about the potential conflict of interest and they may have waived it, choosing instead to present a joint defense. Or, as the State avers, it is possible that appellant told trial counsel that the cocaine either belonged to her alone or to both her and Wheatfall.

Based on the record at trial, the strongest argument supporting the existence of an actual conflict was trial counsel's request that the jury give equal sentences to appellant and Wheatfall, when Wheatfall faced a far greater range of punishment than appellant. The dissenting opinion concludes that this equalization argument handicapped appellant. However, trial counsel was not advancing plausible arguments that helped Wheatfall at the expense of appellant. Rather, he was advancing arguments helpful to both co-defendants. To understand this requires an appreciation of the situation that trial counsel faced.

When the State had proved all enhancement allegations conclusively, trial counsel faced a situation in which the jury was bound to find the enhancement paragraphs true, unless it disregarded its oath to render a true verdict according to the law and the evidence. Under these conditions, it was reasonable trial strategy for trial counsel to ask the jury to overlook only one of Wheatfall's prior convictions, *the disregard of which was necessary for the jury to be able to assess him two to five years,* while not asking the jury also to overlook appellant's prior conviction, *the disregard of which was not necessary for the jury to assess her two to five years.* Although the strategy failed, the reason for its failure was not trial counsel's refraining from asking the jury to disregard its duty a second time in order to find appellant's enhancement allegation not true.

Trial counsel's strategy was to seek equal, minimal sentences of two to five years, based on the small amount of cocaine and the lack of aggravating circumstances surrounding the possession. Trial counsel was making the argument with the best possible chance of success in asking the jury to assess minimal punishments based on the lack of aggravating circumstances surrounding the present offense. One may disagree with that strategy, but there is no conflict of interest in the strategy at all.

The dissenting opinion would hold that the trial court knew or should have known of an actual conflict of interest and that the court should thus have conducted a formal hearing to determine whether appellant had waived her right to conflict-free counsel. At trial, however, the trial court had not yet been alerted to the claims made by appellant in the hearing on her motion for new trial. Appellant and the dissenting opinion view the trial

through the lens of appellant's purported lesser role based on the evidence that she presented at the motion-for-new-trial hearing, which evidence the trial court apparently did not believe because it denied the motion. The trial court's decision whether to hold a formal hearing regarding an actual conflict of interest was based on what the trial court had observed during a trial in which trial counsel had presented a unified defense in the guilt/innocence phase and had asked for identical minimal punishments, not on the matters presented at the motion-for-new-trial hearing.

Under these circumstances, we hold that appellant has not established an actual conflict of interest and, thus, that the trial court had no duty to inquire further into any potential conflict. Accordingly, we overrule appellant's first point of error.

### Ineffective Assistance at the Punishment Stage

█ In her second point of error, appellant contends that trial counsel rendered ineffective assistance of counsel at the punishment stage of trial by failing to investigate or to put on any type of punishment evidence on appellant's behalf. Based again on the testimony presented at her motion-for-new-trial hearing, appellant argues that there were witnesses available and willing to testify on appellant's behalf at the punishment stage. Appellant contends that, had those persons testified, a lower sentence probably would have resulted.

█ To establish ineffective assistance of counsel, an appellant must show that (1) trial counsel's representation was so deficient that it fell below the objective standard of professional norms and (2) but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). Appellant has the burden to prove ineffective assistance of counsel and to rebut the presumption that counsel was acting according to sound trial strategy. *Id.* at 466 U.S. at 689, 104 S.Ct. at 2065.

█ Apart from the testimony that appellant presented at the motion-for-new-trial hearing, there is no record support for appellant's arguments that trial counsel failed to investigate or to present available evidence on behalf of appellant. A trial court is under no obligation to accept as true even unrebutted testimony offered at a hearing on a motion for new trial. *See Messer*, 757 S.W.2d at 828. Moreover, as the State points out, even in the testimony presented at the motion-for-new-trial hearing, there was evidence that trial counsel had spoken to two of appellant's potential witnesses. Trial counsel also called appellant's son to testify at trial to cast doubt on the officers' version of the events.

█ Nevertheless, the decision whether to present witnesses is largely a matter of trial strategy. *See Rodd v. State*, 886 S.W.2d 381, 384 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Here, the record shows that trial counsel pursued a joint strategy of suppressing the evidence necessary to convict both co-defendants, and asked the jury to find at least one of Wheatfall's enhancement allegations not true, so that the jury could give both co-defendants a minimal sentence of two to five years. Although others may disagree with trial counsel's strategy, his actions at trial were consistent with that strategy. Furthermore, there is no showing that, had trial counsel pursued a different strategy at the punishment stage, it would likely have resulted in a more favorable punishment for appellant.

Accordingly, we overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.

The en banc Court consists of Chief Justice RADACk and Justices TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND.

Chief Justice RADACK and Justices NUCHIA, JENNINGS, ALCALA, HANKS, and BLAND join Justice TAFT's opinion for the en banc Court.

Justice HIGLEY, concurring. Justices ALCALA and BLAND join Part II of Justice HIGLEY's concurring opinion.

Justice KEYES, dissenting.

Justice HIGLEY concurring. Justices ALCALA and BLAND join Part II of Justice HIGLEY's concurring opinion.

### Part I

I reluctantly concur in the majority's opinion because I believe that the opinion accurately reflects the current law as applied to the facts in this case. I do not, however, think that the laws of the State of Texas adequately protect a defendant's Sixth Amendment right to counsel when such defendant's attorney is subject to a potential or actual conflict of interest. In such cases, I believe that, as required under Rule 44(c) of the Federal Rules of Criminal Procedure, a pretrial hearing regarding the dangers of multiple representation should be mandatory.

In the present case, I agree with the majority that it was not apparent during the guilt-innocence phase of trial that an actual conflict adversely affected defense counsel's performance. *See Cuyler v. Sullivan,* 446 U.S. 335, 346–47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). The numerous examples offered by the dissent as exhibiting conflict, when viewed dispassionately, as we must, could be attributed to everything from trial strategy to harmless error. We may not, *post hoc,* elevate potential, speculative conflicts of interest to the position of actual, significant conflicts. *See James v. State,* 763 S.W.2d 776, 780 (Tex.Crim.App.1989)

I think, however, that during the punishment phase of the trial, defense counsel's conduct raised the specter of an actual conflict of interest. The logic of the majority's explanation concerning defense counsel's common defense during the punishment phase eludes me. It is totally inconceivable to me how asking the jury to find appellant's enhancements true, and Wheatfall's enhancements not true, constitutes anything but advancing Wheatfall's interests to the detriment of appellant's interests. *See Monreal v. State,* 947 S.W.2d 559, 564–65 (Tex.Crim.App.1997). Defense counsel argued that appellant and Wheatfall should receive the same minimum sentence. Such a result was not even in the realm of possibility unless the jury found Wheatfall *not guilty* of *at least one of his two enhancements.* Defense counsel could have simply stopped there. Yet he went on to request that the jury find appellant *guilty of her one enhancement,* even though such a finding was not necessary to achieve his goal of equal sentencing. How could such an argument be anything but helpful to one client but harmful to another? *See Perillo v. Johnson,* 79 F.3d 441, 447 (5th Cir.1996).

Citing *James,* the dissent suggests that when the attorney is "placed on the horns of a dilemma" as to services for one client over another, an actual conflict exists and each client must be made aware of the conflict before the attorney may ethically proceed with the case. *James,* 763 S.W.2d at 779. While this is a correct statement regarding an attorney's ethical responsibility, it does not accurately reflect the law

regarding the trial court's responsibility when anything but a clear and significant conflict arises during trial.

When, as here, a defendant does not object to dual representation at trial, the trial court generally has no affirmative duty to inquire whether a conflict of interest exists. *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717. "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* While a trial court does not always have an affirmative duty to inquire into the *possibility* of a conflict of interest, it does, however, have a duty to conduct a hearing once it has been alerted, and when it knows or should know, of an *actual* conflict of interest. *Id.* at 346–47, 100 S.Ct. at 1717–18; *Ramirez v. State*, 13 S.W.3d 482, 487 (Tex.App.-Corpus Christi 2000, pet. dism'd) (citing *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir.1992)); *Garza v. State*, 721 S.W.2d 582, 584 (Tex.App.-Houston [1st Dist] 1986, no pet.). In such a case, a trial court must hold a hearing to determine if the defendant knowingly, intelligently, and voluntarily waived his right to conflict-free counsel. *U.S. v. Garcia*, 517 F.2d 272, 277 (5th Cir.1975); *see also Ramirez*, 13 S.W.3d at 487 n. 2.[1] The purpose of this hearing is to ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to her defense by continuing with such counsel under the onus of the conflict; and (3) is aware of her right to obtain other counsel. *Greig*, 967 F.2d at 1022. Such a hearing is commonly referred to as a "*Garcia* hearing."

The trial court's brief, initial inquiry as to the defendants' willingness to be represented jointly did not constitute a *Garcia* hearing. I reiterate, however, that, in Texas, no state court is required to hold a *Garcia* hearing prior to trial. A hearing is required only when a judge *knows or should reasonably know of an actual conflict. Cuyler*, 446 U.S. at 346–47, 100 S.Ct. at 1717–18.

In the instant case, I am not willing to hold that the trial court should have alerted to a conflict during the punishment phase of the trial and stopped the proceedings for a *Garcia* hearing. The defense attorney did not directly ask for the disparate treatment of his two clients, but instead instructed the jury to sign the first page of the verdict form for appellant (finding her enhancement true) and to sign the second page for Wheatfall (finding his enhancements *not true* ). Even our careful reading of the record did not initially reveal the disparity. Accordingly, I cannot conclude that the trial court erred by not holding a hearing.

### Part II

The issues in this case regarding dual representation could have been avoided by a proper pretrial admonishment. Thus, I contend that the law of this State should require the same pretrial inquiry that is required under federal law. It is highly impractical to require a trial court, along with the other rigorous responsibili-

---

1. The right to conflict-free counsel may be waived, but for that waiver to be effective, the record must affirmatively demonstrate that the waiver was made knowingly, intelligently, and voluntarily. *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App.1981); *Ramirez v. State*, 13 S.W.3d 482, 487 (Tex.App.-Corpus Christi 2000, pet. dism'd) (citing *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir.1992)).

For the waiver to be valid, it "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *U.S. v. Garcia*, 517 F.2d 272, 277–78 (5th Cir.1975).

ties of conducting a fair trial, to be constantly on the lookout for the surfacing of some evidence of conflict of interest. Such a requirement puts the trial court in the position of continuously second-guessing a defense counsel's strategy, which is a clear impediment to impartiality.

The requirement of a pretrial hearing with respect to dual or multiple representation has been the practice under the Federal Rules of Criminal Procedure for over two decades.[2] Rule 44(c), added to the Federal Rules in 1980, provides as follows:

> Whenever two or more defendants have been jointly charged to Rule 8(b) or have been joined for trial pursuant to Rule 1.3, and are represented by the same retained or assigned counsel or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall promptly advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

FED.R.CRIM.P. 44(c).

The notes of the Advisory Committee on Rules illustrate the necessity for a rule regarding joint representation. NOTES OF THE ADVISORY COMMITTEE ON RULES OF CRIMINAL PROCEDURE, 1979 amendment, FED.R.CRIM.P. 44(c). The Committee acknowledges that avoiding a conflict of interest is, in the first instance, a responsibility of the attorney. *See id.* They state, however, that "it by no means follows that the inquiry provided for by rule 44(c) is unnecessary." *Id.* The Committee reasons that "even the most diligent attorney may be unaware of facts giving rise to a potential conflict." *Id.* (citing *United States v. Carrigan*, 543 F.2d 1053, 1058 (2d Cir.1976) (Lumbard, J., concurring)). In addition, they point out that the rule will prove "salutory, not only to the administration of justice and the appearance of justice, but the cost of justice," avoiding, *inter alia*, habeas corpus petitions, petitions for new trials, appeals and occasionally retrials. *Id.* (citing *United States v. Mari*, 526 F.2d 117, 119 (2d. Cir.1975) (Oakes, J., concurring)). Finally, the Committee points out that Rule 44(c) does not specify what type of hearing should be held, leaving this within the court's discretion. *Id.* Nevertheless, the Committee points to *Garcia* as "[spelling] out in significant detail what should be done to assure an adequate waiver." *Id.*

Rule 44(c), accompanied by the Committee's commentary, offers specific and detailed instruction regarding implementation of the rule. Texas law already requires a *Garcia* hearing, albeit only when an obvious and actual conflict arises during trial. The incorporation of a Rule 44(c) type requirement would impose little burden, if any, on our trial courts, which are already required under Texas Code of Criminal Procedure article 1.051(g) to conduct a comprehensive pretrial hearing when a defendant desires to waive his or her right to counsel. Moreover, such a

---

**2.** Justice Brennan in his concurring opinion in *Cuyler*, published six months prior to the addition of Rule 44(c), argued that a mandatory pretrial hearing was "necessary since it is usually the case that defendants will not know what their rights are or how to raise them." *Cuyler v. Sullivan*, 446 U.S. 335, 352, 100 S.Ct. 1708, 1720, 64 L.Ed.2d 333 (1980) (Brennan, J., concurring). In addition, he considered it especially "true of the defendant who may not be receiving the effective assistance of counsel as a result of conflicting duties owed to other defendants." *Id.*

rule would relieve trial courts of the more onerous burden of maintaining heightened vigilence during trial to guard against the appearance of an "actual" conflict of interest. The State of Texas would best be served by incorporating an equivalent rule in the Texas Code of Criminal Procedure.

## Part III

### Conclusion

As can be inferred by the opening paragraph of my concurrence, I am highly troubled by this case. Defense counsel was, indeed, placed on the horns of a dilemma when his motion to suppress failed. The trial court was never offered a clear opportunity to ascertain whether a conflict of interest existed. Had appellant been adequately advised regarding the dangers inherent in dual representation, would she have requested separate counsel? I do not know, but she should have had the opportunity. I am convinced that it is time that Texas law related to a single lawyer's representation of multiple criminal defendants align itself with the more prudent and equitable federal standard. A *Garcia* type pretrial hearing informing defendants of the inherent risks of dual or multiple representation would, in the future, avoid the problems existing in this case, as well as serve to equally protect judges, attorneys, and defendants from hazardous pitfalls in similar situations.

Justice KEYES dissenting on en banc consideration.

I respectfully dissent. The central issue presented by this appeal is whether trial counsel's dual representation of appellant and her co-defendant required him to sacrifice appellant's individual interests to the interests of the joint defense strategy, depriving her of her Sixth Amendment right to effective assistance of counsel. The majority's argument that appellant's counsel,

Arthur Jackson, reasonably chose to put on a joint defense, to my mind, begs this question. Because I would hold that appellant met her burden of proof by demonstrating that Jackson was burdened by an actual conflict of interest that adversely affected her interests throughout trial and sentencing, as demonstrated from the record, and because I would also hold that appellant demonstrated that Jackson failed to investigate and put on a defense and mitigating evidence on her behalf that would have benefitted her, but would have interfered with his joint defense strategy, thereby probably causing the rendition of an improper judgment, I would reverse and remand for a new trial.

### Conflict of Interest

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App. 1997) (citing U.S. CONST. amend. VI). The Sixth Amendment guarantees not just the right to counsel, but the right to reasonably effective assistance of counsel. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. *Id.* In such a situation, counsel may breach the duty of loyalty, perhaps the most basic of counsel's duties. *Id.*

The standard of proof of conflict of interest is set out in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Monreal*. A defendant can demonstrate a violation of his right to reasonably effective assistance of counsel when, as here, he has not raised any objection at trial if he can show (1) that his counsel was burdened by an actual conflict

of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler*, 446 U.S. at 348–350, 100 S.Ct. at 1718–20; *Monreal*, 947 S.W.2d at 564.

An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Monreal*, 947 S.W.2d at 564 (citing *James v. State*, 763 S.W.2d 776, 779 (Tex.Crim. App.1989)). The appellant must specifically identify instances in the record that reflect a choice his counsel made between possible alternative courses of action, " 'such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.' " *Ramirez v. State*, 13 S.W.3d 482, 488 (Tex.App.-Corpus Christi 2000, pet. dism'd) (quoting *Perillo v. Johnson*, 79 F.3d 441, 447–48 (5th Cir.1996)). Once the existence of an actual conflict has been established, prejudice to the appellant must be presumed. *Id.* When the attorney is placed upon the "horns of a dilemma" as to services for one client over another, an actual conflict exists and each client must be made aware of such conflict before the attorney may ethically proceed with the case. *James*, 763 S.W.2d at 779.

To prove an adverse effect, a defendant need not show that the conflict changed the outcome of the trial. *Ramirez*, 13 S.W.3d at 487. Rather, the defendant must demonstrate that some plausible defense strategy or tactic might have been pursued, but was not because of the conflict. *Id.*; *see also Perillo*, 79 F.3d at 449. A defendant who shows that a conflict of interest adversely affected the adequacy of representation need not demonstrate prejudice to obtain relief. *Ex parte Acosta*, 672 S.W.2d 470, 474 (Tex.Crim.App.1984); *Ramirez*, 13 S.W.3d at 487.

Appellant has pointed out numerous specific instances of Jackson's actual conflict and its adverse effects on her representation.

*Trial Stage*

As recited by the majority, Officer Sadler entered the apartment appellant shared with her co-defendant, Wheatfall, claiming he had seen cocaine "in plain view" on the coffee table in front of Wheatfall, secured the cocaine, and then obtained consent from appellant to search her apartment. During that search, Sadler found in the apartment and in appellant's purse nine prescription pain-relief pills (hydrocodone), Tylenol, Dramamine pills, and an unidentified over-the-counter cough medicine. Of these, the only controlled substances were the hydrocodone pills; appellant produced a prescription for three of the nine hydrocodone pills at trial.

Appellant was indicted for possession of cocaine with the intent to deliver (a felony) and for possession of the pills (a misdemeanor); and Wheatfall was indicted for possession of a controlled substance (the cocaine). This case was tried against appellant on the charge of possession of the cocaine with intent to deliver, and against Wheatfall on the charge of possession of the cocaine. Significantly, appellant and Wheatfall were not only charged with different crimes, they had dramatically different records and therefore faced dramatically different punishments if found guilty.[1] Nevertheless, Jackson undertook

---

1. At voir dire, the State emphasized the distinction between indictment for possession of a controlled substance with intent to deliver and mere possession and pointed out that there were two separate cases with two separate defendants charged with two separate offenses, one for possession of cocaine (Wheatfall) and the other for possession with intent to deliver (appellant). Jackson conducted no voir dire on the differences be-

to represent both clients and defend them with a joint defense.

On appeal, appellant complains that Jackson suffered from a conflict of interest that adversely affected her defense. She has pointed out numerous places in the record where Jackson made no attempt before or during trial to control testimony prejudicial to her, either through a motion in limine or with an objection with a request for an instruction to disregard. She has also pointed out Jackson's failure to put on evidence favorable to her defense.

Jackson's entire strategy appears to have been to pursue only those avenues of defense that corresponded to a joint defense strategy, no matter what the effect might be on appellant's individual interests. Thus, in connection with his joint defense strategy, Jackson filed a motion to suppress the evidence, which was carried with the trial, but was taken up outside the presence of the jury almost immediately after voir dire began. As both the majority and appellate counsel point out, this was the only defense possible, given Jackson's dual representation. At the hearing on the motion to suppress, Jackson argued only that the cocaine should be suppressed because it was not in plain view, attempting ineffectually to elicit testimony to this effect from Sadler. Sadler not only testified that the cocaine was in plain view, but also testified at length about the "large quantity" of pills found in the apartment, repeatedly referring to them as "narcotics" and "contraband" "strewn" throughout the house, particularly in appellant's handbag and on her bedside table,[2] and he testified

to extensive past contacts with appellant during his investigation of activities involving prostitution and narcotics. The motion to suppress was denied.

Despite the prejudicial nature of Sadler's testimony at the motion-to-suppress-hearing, Jackson did not file a motion in limine and freely allowed Sadler to repeat at trial his testimony about the "large quantity" of "narcotic pills" he found in appellant's handbag and on her nightstand and "pretty much everywhere," using the same inflammatory and misleading language, with no objection whatsoever. Rather, Jackson asked, "With all of this, then why would you need a consent to search form signed?"

In addition, Sadler testified that, after he secured the front room, he determined that some of appellant's children were in the back room. He described how appellant's daughter came out of a back room and fell to the floor crying, "My mother's going back to prison. My mother's going back to prison." He testified that a Hispanic male found in the apartment had an outstanding warrant for indecency with a child. Having made no motion in limine to control any of this additional prejudicial testimony against appellant, Jackson likewise failed to object to any of it at trial.

On cross-examination, Jackson, *appellant's own counsel*, spent 20 pages of the record asking Sadler why he had come to the apartment and eliciting testimony that the officer had made many narcotics arrests, that he was very familiar with appellant, that she was suspected of drug use

tween the charges against his two clients, or the effect these differences might have on the jury's willingness to convict, or the punishment the jurors would be willing to consider under particular circumstances.

**2.** The State's toxicologist, whom the State called to testify only as its next-to-last witness

at trial, testified that, with the exception of the six hydrocodone pills in a pill bottle with a scratched-off label, for which appellant had failed to produce a prescription, the pills were *not* controlled substances, but over-the-counter medications.

and prostitution on previous occasions; and that she had only recently been released from prison.[3] This testimony elicited by appellant's counsel could serve no purpose other than to confirm any suspicions the jury might have had about appellant's bad character, prison record, narcotics use, prostitution, and drug dealing, thereby irredeemably prejudicing appellant, while diverting attention from Jackson's other client, Wheatfall, who was never mentioned in the trial except as sitting on the sofa and lunging for the cocaine in front of him when Sadler entered the living room. Wheatfall was thus benefitted at appellant's expense.

In addition to both eliciting and failing to control or object to testimony irrelevant to his joint defense strategy of suppressing evidence regarding the cocaine, but highly prejudicial to appellant, Jackson never argued a mere presence defense on appellant's behalf, even though, as appellant now argues, "[t]hat is a very viable defense in a situation like this where there is no other information concerning any activity in the house."[4] Of course, as appellant further argues, no such defense could be made on appellant's behalf, given Jackson's dual representation of appellant and Wheatfall, since if appellant was merely present in the room where cocaine was found and Wheatfall was reaching for the cocaine, the only reasonable inference is that Wheatfall, and not appellant, possessed the cocaine. Moreover, since Jackson had allowed Sadler to testify freely about the "narcotics" and "contraband" in appellant's purse and bedroom, and had himself elicited testimony from Sadler about that officer's past contacts and familiarity with appellant, the prejudicial effect of such testimony would have far outweighed any credence a jury might be tempted to give to a mere presence defense.

Jackson failed even to press the sole object of his joint defense effort—the argument that the cocaine should be sup-

---

3. The following example of the testimony is illustrative:

DEFENSE: You know Nathan Spinks?

OFFICER: No, sir, I don't know him.

DEFENSE: You know Mrs. Gaston is his mother?

OFFICER: Yes, sir, I know Miss Gaston.

DEFENSE: And how many—and how long have you known Ms. Gaston?

OFFICER: Probably four years, four and a half years.

DEFENSE: Four years. And you have been around her on three, four, five, six, seven occasions?

OFFICER: About—

DEFENSE: How many?

OFFICER: I couldn't tell you how many occasions. She hasn't—she hasn't really been back that long at this point. So, I mean, I don't know how many occasions I have been with—I have seen her in several parts of town and contacted her in different places.

DEFENSE: You had contact with her in 2000, right?

OFFICER: Yes, sir.

DEFENSE: At a motel?

OFFICER: Yes, sir.

DEFENSE: Any you went in to her motel room and searched; didn't you?

OFFICER: No, I did not.

DEFENSE: You came into her apartment in February, 2001, right?

OFFICER: No, sir.

DEFENSE: And you searched her apartment then; right?

OFFICER: I had no knowledge she lived at 701 Preston, sir.

4. To convict an accused of unlawful possession of a controlled substance, the State must prove that the accused (1) exercised care, custody, control, or management over the contraband and (2) knew the matter was contraband. *Gilbert v. State*, 874 S.W.2d 290, 297 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Mere presence in a location where narcotics are possessed does not necessarily establish possession; rather, evidence of knowledge of the contraband and control over the contraband must affirmatively link the accused to the contraband. *Id.*

pressed because it was not in plain view—when to do so would have necessitated further questioning of appellant's son, Nathan Spinks. Nathan, whom Jackson called as his next-to-last witness (Sadler being the last), testified that he and his mother had been at the beach earlier in the day and that, at the time Sadler was knocking at the door of apartment 115 across the hall, he was leaving the apartment to do some laundry; Sadler saw Nathan across the hall and asked him to step back inside the apartment, but, before he could, Sadler shoved him out of the way. Nathan also testified that the cocaine was "under some papers and stuff on the table" and that it was not in "plain view." Once he had elicited this information, Jackson terminated his questioning of Nathan without asking him if he knew how the cocaine got there, how long had it been there, how long after he and his mother had returned from the beach Sadler had come to the apartment, or—most critically—who had care, custody, or control of the cocaine. That is, Jackson failed to ask all the questions that might have gone to establish appellant's mere presence defense, but which could only have undermined a joint defense—as appellant points out.

In my view, the most charitable inference from the multiple instances of Jackson's sacrifice of appellant's interests is that Jackson was hamstrung by his dual representation of both appellant and her co-defendant and that he resolved his dilemma by sacrificing appellant's interests to the *only* defense he could present on behalf of both his clients—that evidence of the cocaine should have been suppressed. Even that, however, does not explain Jackson's failure to seek to prohibit highly inflammatory *irrelevant* testimony, unless his sole goal was to advance Wheatfall's interest in being considered as less culpable than appellant, at appellant's expense, so that the differences between them would be minimized. I would hold that appellant showed that Jackson had an actual conflict of interest which adversely affected her and that she was therefore denied her Sixth Amendment right to effective representation at trial.

### Punishment Phase

I would also hold that Jackson's conflict of interest manifested itself at the punishment phase, again denying appellant her right to conflict-free representation, as appellant contends in her second point of error.

In all criminal cases, after a finding of guilt, both the State and the defendant may offer evidence as to any matter the court deems relevant to sentencing. The trial court is also required to afford a defendant the opportunity to present evidence regarding punishment. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2004). Such evidence may include a defendant's prior criminal record, general reputation, character, an opinion regarding character, the circumstances of the offense for which the defendant is being tried, and any other evidence of an extraneous crime or bad act the defendant has been shown beyond a reasonable doubt to have committed. *Id.*

Prior to sentencing, the State proved that appellant was the same person who had been placed on four years' deferred adjudication for possession of one to four grams of cocaine on July 31, 1999, and that the probation was revoked when appellant was subsequently convicted of another possession of one to four grams of cocaine on August 26, 1999. Appellant was sentenced on both counts to three years in prison and, therefore, had one enhancement paragraph. If the enhancement were found "true" by the jury, the range of her punishment was from two to 20 years in prison; if it were found "not true," appellant's

maximum sentence was 10 years. *See* Tex. Pen.Code. Ann. §§ 12.33, 12.42(a)(3) (Vernon 2003). Her co-defendant, Wheatfall, had three prior felony convictions and two enhancement paragraphs which were also proved. (He was indicted as an habitual offender.) Therefore, the range of his punishment was from 25 to 99 years or life in prison, if both enhancements were found true. *See* Tex. Pen.Code. Ann. § 12.42(d) (Vernon 2003).

Jackson failed to put on any punishment witnesses to counter the State's evidence of appellant's prior convictions and revocation of probation. Again, his strategy appears to have been to minimize the differences between his two clients. However, Wheatfall faced the potential of a much longer sentence. Jackson's representation of both appellant and her co-defendant thus presented a dilemma. Despite their different criminal records, Jackson asked the jury to determine that both appellant and her co-defendant receive *equal* punishment. Because the maximum punishment appellant could receive was 20 years, if both enhancements were found true, and the maximum sentence Wheatfall could receive was life in prison, with a minimum punishment of 25 years, if both of his enhancements were found true, this equalization argument handicapped appellant. As appellant points out, Jackson's equalization argument also required his not putting on evidence of mitigating circumstances on appellant's behalf, because "any of the testimony concerning what appeared to be her lesser role by necessity elevated her co-defendant's role."

While the majority finds the equalizing effect of these decisions to be compatible with Jackson's joint defense strategy, I find them to be blatant examples of Jackson's sacrifice of appellant's interests to his own interest in maintaining dual representation, and to Wheatfall's interest in having appellant presented as the main actor, thus deserving of a sentence at least as long as Wheatfall's.

I would hold that Jackson's conflict of interest denied appellant her right to effective representation at the punishment phase as well as at the trial stage.

### Failure to Investigate

Appellant also argues that she was denied effective assistance of counsel at both the trial and the punishment stages by Jackson's failure to investigate and present a mere presence defense, and by his failure to investigate and present mitigating evidence on her behalf.

To show ineffective assistance of counsel in general (as opposed to ineffective counsel due to a conflict of interest), an appellant must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms, and (2) but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694, 104 S.Ct. at 2064–65, 2068; *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). The two-pronged test for ineffective assistance of counsel set out in *Strickland* applies to sentencing proceedings. *Wiggins v. Smith*, 539 U.S. 510, 517, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Hernandez v. State*, 726 S.W.2d at 57. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Wiggins*, 539 U.S. at 523, 123 S.Ct. at 2542; *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App.1998). The appellant must satisfy both prongs of the *Strickland* test, or the claim of ineffective assistance will fail. *Wiggins*, 539 U.S. at 523, 123 S.Ct. at

2535; *Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071; *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001).

Counsel's strategic choices made after a thorough investigation of the law and the facts relevant to plausible options are "virtually unchallengeable" on a claim of ineffective assistance of counsel. *Wiggins,* 539 U.S. at 517, 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). However, we must define the deference owed to allegedly strategic judgments in terms of the adequacy of the investigations supporting those judgments. *Id.* Counsel's " 'strategic choices made after a less than complete investigation are considered reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation.' " *Id.* Thus, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*

A failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel has "not 'fulfill[ed][his] obligation to conduct a thorough investigation of the defendant's background.' " *Id.* (quoting *Williams v. Taylor,* 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389); *see also (Ex Parte Duffy,* 607 S.W.2d 507, 526 (Tex.Crim.App. 1980) noting it may not be argued that a given course of conduct is within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation that would enable him to make an informed, rational decision), *overruled on other grounds by Hernandez v. State,* 988 S.W.2d 770, 771 (Tex. Crim.App.1999); *see also Rivera v. State,* 123 S.W.3d 21, 31 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). Thus, to prevail on a claim that counsel was ineffective because of a failure to investigate, a defendant must show both that his counsel's failure to investigate was unreasonable and that, had counsel performed his duty, there is a reasonable probability that the outcome of the proceeding would have been different.

It is an appellant's burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Thompson,* 9 S.W.3d at 813; *Jackson,* 973 S.W.2d at 956; *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App.1992). To determine whether counsel's failure to investigate and present evidence on his client's behalf violates an appellant's Sixth Amendment right to reasonably effective representation, a court must evaluate the evidence presented originally at trial, *together with the totality of the omitted evidence in the post-conviction record,* to determine whether the entire record, viewed as a whole, raises " 'a reasonable probability that the result of the . . . proceeding would have been different' if competent counsel had presented and explained the significance of all the available evidence." *Williams v. Taylor,* 529 U.S. 362, 399, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) (sentencing proceeding); *see also Wiggins,* 539 U.S. at 523, 123 S.Ct. at 2542 (in reaching conclusion whether jury would have returned with different sentence had it been confronted with mitigating evidence, "we evaluate the totality of the evidence—'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s]* ' ") (quoting *Williams,* 529 U.S. at 397–98, 120 S.Ct. at 1495) (emphasis added in *Wiggins* ); *Ex parte Torres,* 943 S.W.2d 469, 475 (1997) (same).

The Court of Criminal Appeals explained the rationale for the totality of the evidence review in *Ex Parte Torres:*

In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. *Ex Parte Duffy,* 607 S.W.2d 507, 512–13 (Tex.Crim.

App.1980). *See also Jackson v. State*, 877 S.W.2d 768, 772–73 (Tex.Crim.App. 1994) (Baird, J. concurring); *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex.Crim. App.1992) (Benavides, J. dissenting). Moreover, the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. *The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim. Duffy*, 607 S.W.2d at 513. Moreover, the trial record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. *Vasquez*, 830 S.W.2d at 951. While *expansion of the record may be accomplished in a motion for new trial*, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point. *Jackson*, 877 S.W.2d at 772 n. 3. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion.

943 S.W.2d at 475 (emphasis added); *see also Ex parte Nailor*, No. 1109–03, 2004 WL 574634 (Tex.Crim.App. Mar.24, 2004).

The majority opines that, apart from the testimony appellant presented at the motion-for-new-trial hearing, there is no record support for appellant's arguments that trial counsel failed to investigate or present available evidence on behalf of appellant, and it concludes that a trial court is under no obligation to accept as true even unrebutted testimony offered at a hearing on a motion for new trial. Therefore, since the trial court did not grant appellant a new trial, we must defer to the trial court's judgment that a new trial was not warranted because of ineffective assistance of counsel. I respectfully disagree.

The trial record reflects multiple breaches of appellant's trial counsel's duty to represent appellant's individual interests through the failure to control prejudicial evidence. It also omits the evidence supporting appellant's mere presence defense and her mitigation evidence; indeed, the development of such evidence was incompatible with the joint defense strategy mandated by Jackson's conflict of interest. As a result, this evidence was not presented until the motion-for-new-trial hearing. In other words, just as the *Torres* court foretold, the very ineffectiveness claimed by appellant—her trial counsel's conflict of interest and failure to investigate—prevented the record from containing all the information necessary to substantiate appellant's claims that she had a mere presence defense and mitigating factors that weighed in her favor. However, unlike in *Torres*, appellant *did* replace her trial counsel with new counsel in time to file a motion for new trial and obtain an evidentiary hearing, at which she presented the evidence necessary to substantiate her ineffective assistance of counsel claims.

Our task in evaluating ineffective assistance of counsel under *Strickland* is not, in my view, to review the trial court's decision in post-conviction proceedings for abuse of discretion; it is to evaluate the totality of the evidence presented both at trial *and in those post-conviction proceedings*, as *Williams*, *Wiggins*, and *Torres* require. That the trial court denied the motion for new trial is thus irrelevant to our obligation to consider the totality of the evidence relevant to appellant's ineffective assistance claims adduced both at trial and in the hearing on her motion for new trial. *See Nailor*, 2004 WL 574634 (holding that direct appeal record adequate to address four allegations of ineffective assistance of trial counsel alleged by new counsel at evidentiary hearing on

motion for new trial, but not five additional allegations; appellant properly developed habeas record with respect to original allegations and one new allegation).

Moreover, the majority's statement that the decision whether to present witnesses is largely a matter of trial strategy, again begs the very question we are required to answer: Does Jackson's failure to investigate and present evidence of a mere presence defense or evidence of mitigating circumstances on appellant's behalf represent "a reasonable decision that makes particular investigations unnecessary," as *Strickland* and *Wiggins* require, or does his failure to investigate and present evidence fall below an objective standard of reasonableness based on prevailing professional norms? I do not believe the standard of proof of *Strickland's* first prong permits us to attribute the deficiencies in Jackson's performance speculatively to trial strategy, particularly when those differences are equally attributable to a conflict of interest and the totality of the evidence support the latter attribution, not the first.

At the hearing held on her motion for new trial, appellant presented evidence both that she had a viable mere presence defense, which Jackson refused to consider and failed to present, and that she had attempted to get Jackson to investigate her case and to present mitigating evidence, but that he refused. Appellant testified that Jackson did not visit her in jail or talk to her about her case. Jackson's lack of interest in appellant was further confirmed by the testimony of appellant's parole officer, her mother, and a friend, all of whom proffered their testimony at the hearing on the motion for new trial.

In support of her claim that she had a viable mere presence defense, appellant testified that the cocaine was found in her apartment where she was living with her co-defendant. She testified that the co-

caine was not hers, but she knew that it was there because she knew Wheatfall was selling drugs. She said that she and her children had been to the beach on the day in question and had only been home for a short while when Sadler entered her apartment. Appellant testified that she told Jackson that the cocaine was not hers, and that it belonged to Wheatfall, but Jackson was not interested and did not tell her she had a possible mere presence defense. Appellant testified that she was trying to get out of the relationship with Wheatfall, and, at the time of her arrest, she had rented another apartment. She gave a copy of the lease to the new apartment to Jackson.

Appellant also proffered witnesses who provided testimony relevant to mitigation of appellant's punishment—all of whom testified Jackson failed to contact them. Appellant's parole officer, Frederick Manuel, testified that appellant had previously been in prison for possession of cocaine, but had been on parole since her release. He testified that appellant had passed all three of her random urinalyses while on parole, and that, other than the incident in question, she had not been in any trouble. Manuel further testified that appellant had a positive attitude; he noted that her work was spotty, probably because of "the difficulty of working and taking care of five children." Manuel did not remember if Jackson ever tried to contact him, but he was positive that he never talked to Jackson.

Eddie McKinney, appellant's mother, testified that Jackson never contacted her, and she tried to contact Jackson, but he never returned her calls. McKinney would have testified at trial that appellant was trying hard to keep her family intact by working and by trying to get into a new apartment, away from Wheatfall.

Appellant also proffered the testimony of Barbara Moles, a friend of appellant. Moles testified that she sensed that drug trafficking was taking place at the apartment because of people coming to and going from the apartment or waiting for Wheatfall. She had tried to contact Jackson on multiple occasions and was successful only because of her persistence. Nevertheless, Jackson did not call Moles to testify at appellant's trial or sentencing.

I would conclude, on the basis of the totality of the evidence, including the evidence adduced at trial and at the hearing on appellant's motion for new trial, that the limitations on Jackson's investigation and presentation of evidence on appellant's behalf were not supported by reasonable professional judgment. *See Wiggins*, 539 U.S. at 523–24, 123 S.Ct. at 2542–43; *Williams*, 529 U.S. at 395–96, 120 S.Ct. at 1514–15. These limitations were, instead, dictated by Jackson's conflict of interest, which prevented him from representing appellant's interests at both the guilt/innocence and the punishment phases and made any investigation of facts that benefitted her superfluous. I would hold that appellant carried her burden under the first prong of *Strickland*.

To prevail under *Strickland*, however, an appellant must also show that, but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65. To determine whether there is a reasonable probability that the result of the proceeding would have been different if competent counsel had investigated appellant's potential mere presence defense and mitigating circumstances and had presented and explained the significance of all the available evidence on her behalf, we must again evaluate the totality of the evidence adduced at trial and in appellant's motion

for new trial. *See Wiggins*, 539 U.S. at 524, 123 S.Ct. at 2543; *Williams*, 529 U.S. at 396, 399, 120 S.Ct. at 1515, 1516.

Here, in my view, the evidence of appellant's defenses and mitigating circumstances is sufficient to demonstrate a reasonable probability that the result of the trial and punishment phase would have been different if Jackson had not violated his professional duties. *See Wiggins*, 539 U.S. at 524, 123 S.Ct. at 2543 ("Had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence."); *Williams*, 529 U.S. at 399, 120 S.Ct. at 1516 ("The entire postconviction record, viewed as a whole and cumulative of mitigation evidence presented originally, raised 'a reasonable probability that the result of the sentencing proceeding would have been different' if competent counsel had presented and explained the significance of all the available evidence.").

I would hold that appellant was deprived of her constitutional right to effective representation not only under *Cuyler* and *Monreal*, by Jackson's conflict of interest, but also under *Strickland* and *Wiggins*, by Jackson's failure to investigate and present evidence competently on her behalf. I would sustain both of appellant's points of error.

### Waiver

The State has argued that appellant waived her right to conflict-free counsel. The right to conflict-free counsel may be waived, but for that waiver to be effective, the record must show that the waiver was made knowingly, intelligently, and voluntarily. *Ramirez*, 13 S.W.3d at 487 (citing *United States v. Greig*, 967 F.2d 1018, 1021 (5th Cir.1992)); *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex.Crim.App.1981). A trial court does not always have an affir-

mative duty to inquire into the *possibility* of a conflict of interest; it does have a duty to conduct a hearing once it has been alerted, and when it knows or should know, of an *actual* conflict of interest. *See Ramirez*, 13 S.W.3d at 487 (citing *Greig*, 967 F.2d at 1022); *Garza v. State*, 721 S.W.2d 582, 585 (Tex.App.-Houston [1st Dist.] 1986, no pet.). To establish waiver on the record, the trial court must hold a hearing to determine if the defendant knowingly, intelligently, and voluntarily waived his right to conflict-free counsel. *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir.1975). The purpose of a *Garcia* hearing is to ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of the conflict; and (3) is aware of his right to obtain other counsel. *Greig*, 967 F.2d at 1022.

The trial court in this case did not hold a *Garcia* hearing. The only reference to the dual representation occurred before voir dire, when the following exchange took place between the court and the defendants:

> THE COURT: Before we get started I just need to be sure that there is no conflict among ... Mr. Wheatfall and Miss Gaston, concerning Mr. Jackson representing both of you-all?
>
> You are shaking your heads. I need to hear your answers.
>
> WHEATFALL: No, ma'am.
>
> GASTON: No, ma'am.
>
> THE COURT: Mr. Jackson made the same representation to me. I am sure you-all are comfortable having the same lawyer representing you. I don't see any apparent conflict among yourselves with one attorney representing you.
>
> In other words, he is not going to have to sacrifice the defense for one to make up a defense for the other?
>
> WHEATFALL: No, ma'am.
>
> GASTON: No, ma'am.
>
> THE COURT: Okay. You are comfortable?
>
> WHEATFALL: (Nods.)
>
> GASTON: Yes, ma'am.

This interchange between the trial court, appellant, and Wheatfall satisfied none of the factors set out in *Greig* and did not constitute a proper hearing under *Garcia*. *See Greig*, 967 F.2d at 1022; *Garcia*, 517 F.2d at 277. The record, therefore, does not reflect that appellant knowingly and intelligently waived her right to effective counsel. I would hold, therefore, that the right was not waived.

### Conclusion

I agree with the concurrence that, to avoid the expense of fruitless trials with conflicted counsel, Texas law should require the same pretrial inquiry regarding dual representation by counsel that is required by federal law. However, I disagree with the conclusion of both the majority and the concurrence that this case is not reversible for ineffective assistance of counsel under current Texas law. I believe that Gaston has carried her burden under *Cuyler* and *Monreal* by showing by specific references to the record that her counsel, Jackson, was burdened by an actual conflict of interest and that the conflict had an adverse effect on specific instances of her counsel's performance. I further believe that she has borne her burden of showing that her counsel's failure to investigate and present evidence on her behalf violated her Sixth Amendment right to reasonably effective representation under the standard set out in Strickland, Wiggins, and *Ex Parte Torres*.

I would reverse the judgment of the trial court and remand the cause for a new trial.