Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-10-00562-CR

Richard M. **LOPEZ** II,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR5572
Honorable Ron Rangel, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  August 31, 2011

AFFIRMED

Appellant Richard M. Lopez II appeals his two convictions for sexual assault. He argues four issues on appeal; two of which raise ineffective assistance of counsel. In his remaining two issues, Lopez argues that the State's closing argument violated his state and federal constitutional rights against double jeopardy. We affirm the trial court's judgment.

**BACKGROUND**

After exchanging text messages and talking on the phone one night, Lopez and a young woman named Bernadette decided to meet at a McDonald's. Lopez brought his friends, Vanessa Peralez and Leonard Howard, and Bernadette was accompanied by her sister. After drinking at a liquor store and then at a bar, Bernadette's sister left the group and the remaining four continued drinking at Lopez's mother's home. Later in the evening, Bernadette started falling asleep on the floor of Lopez's bedroom. According to Bernadette, Howard then held her down and put his penis in her mouth, and Lopez penetrated her vaginally and anally.

Lopez and Howard were charged with sexually assaulting Bernadette. Lopez retained counsel, Raymond Martinez, to defend him and recommended that Howard retain Martinez as well. Aware that Martinez was representing Lopez, Howard also decided to retain Martinez. According to Martinez, both Lopez and Howard asserted that their sexual conduct with Bernadette was consensual, and thus Martinez did not envision a conflict in representing both defendants. Lopez and Howard were scheduled to have separate trials, with Lopez's trial to proceed first.

Howard initially volunteered to testify in Lopez's defense but changed his mind during Lopez's trial. The night after the State rested its case, Martinez informed Howard that he had the right not to testify and that if he still wanted to testify, the court would likely appoint independent counsel to advise him about that decision in light of his pending trial. Howard ultimately decided not to testify. Although Martinez believed that Lopez would have appreciated it if Howard testified, Martinez made no further attempt to secure Howard's testimony. In Lopez's trial, Martinez called Lopez's mother and Vanessa Peralez to support that Bernadette consented to sexual relations with Lopez.

At the close of the guilt/innocence phase of Lopez's trial, the jury convicted Lopez of two counts of sexual assault. During the punishment hearing, the State presented evidence that Lopez had beaten and vaginally penetrated a woman named Josephine, the mother of his child, with a metal pole. Lopez had been charged with the sexual assault of Josephine, and that trial was scheduled after Lopez's trial concerning Bernadette. During closing arguments (in the case concerning Bernadette), the State asked the jury to punish Lopez for what he did to Josephine. Lopez was sentenced to twenty years' imprisonment for both counts of sexual assault. Lopez filed a motion for new trial, arguing that he received ineffective assistance of counsel, and Martinez testified at the hearing. The trial court denied the motion. Lopez appeals.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In two issues, Lopez argues that the trial court erred by denying his motion for new trial, which was based on claims of ineffective assistance of counsel. Lopez contends that: (1) Martinez's joint representation of him and Howard gave rise to an actual conflict of interest that adversely affected Martinez's representation; and (2) Martinez failed to object to the State's argument regarding Lopez's extraneous assault of Josephine during the punishment phase.

### A. The *Cuyler* Standard for Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right encompasses both the right to counsel and to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). We review most claims of ineffective assistance of counsel under the standard set out in *Strickland*, but we review claims involving an actual conflict of interest where an appellant fails to timely object at trial, such as in this case, under

*Cuyler v. Sullivan*, 446 U.S. 335 (1980). *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007); *James v. State*, 763 S.W.2d 776, 778–79 (Tex. Crim. App. 1989).

The *Cuyler* exception to *Strickland* has two elements. *Acosta*, 233 S.W.3d at 356. The appellant must show (1) there was an actual conflict of interest (2) that conflict adversely affected counsel's performance. *Cuyler*, 446 U.S. at 350; *accord Acosta*, 233 S.W.3d at 355. If an appellant shows both elements, then prejudice is presumed. *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 692).

**B.  Actual Conflict of Interest**

*1. Applicable Law*

Joint representation does not automatically create an actual conflict of interest. *See Holloway v. Arkansas*, 435 U.S. 475, 482 (1978) (explaining that joint representation is not per se ineffective assistance); *James*, 763 S.W.2d at 778 (same); *De Leon v. State*, 657 S.W.2d 160, 165 (Tex. App.—San Antonio 1983, no pet.) (same). Rather, joint representation may actually enhance a defense when the defendants raise a common defense. *See Cuyler*, 446 U.S. at 348 (explaining that joint representation does not give rise to a presumption of ineffective assistance because defendants could benefit from a common defense); *Maya v. State*, 932 S.W.2d 633, 635 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (same). Although a potential conflict of interest "inheres in almost every instance of multiple representation," an appellant must show an *actual* conflict of interest under *Cuyler*. *See Cuyler*, 446 U.S. at 348.

Counsel has an actual conflict of interest if he "'is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest.'" *Acosta*, 233 S.W.3d at 355 (quoting *Monreal*, 947 S.W.2d at 564). In joint representation cases, an actual conflict exists if "'one defendant stands

to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing.'" *Routier v. State*, 112 S.W.3d 554, 584 (Tex. Crim. App. 2003) (quoting *James*, 763 S.W.2d at 779). "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as 'eliciting (or failing to elicit) evidence helpful to one [interest] but harmful to the other.'" *Gaston v. State*, 136 S.W.3d 315, 318 (Tex. App.—Houston [1st Dist.] 2004, pet. struck) (en banc) (quoting *Ramirez v. State*, 13 S.W.3d 482, 488 (Tex. App.—Corpus Christi 2000, pet. dism'd)).

"[A] potential conflict may become an actual conflict, but [an appellate court may not] speculate about a strategy an attorney might have pursued . . . in the absence of some showing that the potential conflict became an actual conflict." *Routier*, 112 S.W.3d at 585 (referencing the analysis in *James*, 763 S.W.2d at 781). "'[U]ntil a defendant shows that his counsel *actively represented conflicting interests*, he has not established the constitutional predicate for his claim of ineffective assistance.'" *Acosta*, 233 S.W.3d at 355 (quoting *Cuyler*, 446 U.S. at 349–50).

*2. Analysis*

Lopez argues that Martinez had an actual conflict of interest when he informed Howard of his right not to testify because Martinez was, in effect, counseling Howard against testifying in Lopez's defense. Lopez also contends that there was an actual conflict when Martinez failed to call Howard to testify after Howard decided not to testify. We disagree with both points.

Martinez planned on raising a common defense in both Lopez's and Howard's trial: Bernadette's consent. For this reason, Martinez testified that he never anticipated any conflict

between Lopez and Howard.[1] As such, this is an instance of joint representation that is expected to benefit both defendants. *See Cuyler*, 446 U.S. at 348; *Maya*, 932 S.W.2d at 635.

Moreover, this case is distinguishable from *Ex parte Parham*, 611 S.W.2d 103 (Tex. Crim. App. 1981), which Lopez cites, holding that there was an actual conflict when counsel, who was aware of a particular conflict from the start of his joint representation, advised one co-defendant not to testify that he shot the victim in defense of the other. *See id.* at 105. There is no evidence in the present case that Martinez instructed Howard not to testify. Specifically, Martinez testified:

> I advised [Mr. Howard] that because he had a case pending, obviously his right not to testify and invoke his Fifth Amendment privileges would apply. I suggested to him, however, that the judge would probably take it upon himself to appoint other counsel to investigate that issue before Mr. Howard testified. . . . I tried to couch it in terms of passing on information, I wouldn't call it advice. Yes, I was [Mr. Howard's] lawyer. However, I knew the Court was not going to allow me in the middle of a trial to be consulting with Mr. Lopez, at the same time consulting with Mr. Howard. So I suggested to [Mr. Howard] that if he still wanted to testify, that he come down to the court, we make the situation known to the Court and the Court would probably appoint . . . outside counsel to consult with Mr. Howard . . . .

Martinez further testified that Howard had initially volunteered to testify in Lopez's defense. Martinez planned to call Howard so long as he was willing to testify and had always considered it to be Howard's choice whether to testify. Unlike the attorney in *Parham* who attempted to persuade a willing co-defendant not to testify, Martinez merely informed Howard that he had the right not to testify and Howard thereafter became unwilling to testify.

An attorney representing a defendant has the duty to inform his client of his privileges and rights regarding his decision to testify. *See Johnson v. State*, 169 S.W.3d 223, 235 (Tex.

---

[1] Martinez testified: "The case never got to the point where I felt there was a conflict that prevented me from effectively representing Mr. Lopez." He further explained that he did not anticipate any conflict because he believed that Lopez and Howard would raise the same defense, neither Lopez nor Howard was likely to try to shift blame to the other, or no evidence would help one defendant that would hurt the other.

Crim. App. 2005) ("[D]efense counsel shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant."). Thus, an attorney's fulfillment of this duty when he is representing co-defendants does not automatically give rise to an actual conflict of interest because this duty exists in every instance of joint representation. *See Holloway*, 435 U.S. at 482; *James*, 763 S.W.2d at 778 (same); *De Leon*, 657 S.W.2d at 165.

We also find Lopez's second argument unpersuasive. Martinez could not have compelled Howard to testify and, after Howard had changed his mind, Martinez was not permitted to call him to testify. *See Whitmore v. State*, 570 S.W.2d 889, 896 (Tex. Crim. App. 1976) ("A defendant may not call as a witness a co-defendant who has indicated he will assert his privilege against self-incrimination under the Fifth Amendment of the United States Constitution."); *Phelps v. State*, 730 S.W.2d 198, 201 (Tex. App.—San Antonio 1987, no pet.); *see also Victoria v. State*, 522 S.W.2d 919, 922 (Tex. Crim. App. 1975) (holding that a co-defendant did not have the right to compel another co-defendant to testify although she had waived the right in a previous proceeding). Thus, because it was Howard who chose not to testify, it was not Martinez's actions or inactions that advanced either Howard's or Lopez's interests over the other's interests. *See Acosta*, 233 S.W.3d at 355; *Monreal*, 947 S.W.2d at 564 (requiring that it be *counsel's* choice to advance other interests above a client's interest to constitute an actual conflict of interest). We therefore conclude that there was no actual conflict of interest and Lopez is not entitled to a presumption of prejudice under *Cuyler*.

## B. Failure to Object to Closing Argument

Lopez also claims he received ineffective assistance of counsel because Martinez failed to object to the following statement in the State's closing argument: "Ladies and gentlemen, no

one can predict the future. No one even knows if [Josephine's] case will ever be tried or heard. No one knows. We are here on one case, [Bernadette's], and part of [Bernadette's] punishment includes what happened to [Josephine]." Lopez argues that the State effectively told the jury that it should convict and punish Lopez for what he did to Josephine independent of his acts with Bernadette.

To establish ineffective assistance of counsel based on attorney error, an appellant must meet both prongs of the *Strickland* standard by showing that trial counsel's assistance "fell below an objective standard of reasonableness" and thereby prejudiced the appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *accord Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). When reviewing an ineffective assistance claim for deficient assistance, we look to "the totality of the representation and the particular circumstances of each case." *Thompson*, 9 S.W.3d at 813. A claim of ineffective assistance of counsel "must be firmly founded in the record." *Id.*

At the hearing on Lopez's motion for new trial, Martinez gave four reasons why he did not object to the States' closing argument. First, he was concerned that it might draw attention to the argument when the jurors may not have been paying attention. Second, he explained that objecting may have caused some jurors to give the evidence more weight because the defense wanted to keep it out. Third, he stated that the court could have overruled the objection. And finally, he did not object because the State had spent so little time on the issue that he did not believe it was worth objecting to. Because Martinez explained that not objecting was part of his trial strategy, to which we must give great deference, Lopez has not established that Martinez's performance was deficient. *See Strickland*, 466 U.S. at 689.

## DOUBLE JEOPARDY

In his remaining two issues, Lopez contends that the State's statement that Lopez needed to be punished for his acts toward Josephine violated the prohibitions against double jeopardy under both the Texas and U.S. constitutions. "The Texas constitutional protection against multiple punishments is not broader than that provided in the federal constitution. It is, therefore, unnecessary to analyze the Texas provisions separately." *Ex parte Williamson*, 924 S.W.2d 414, 415 n.4 (Tex. App.—San Antonio 1996, pet. ref'd).

The Texas and U.S. constitutions prohibit multiple prosecutions for the same criminal offense. *See* U.S. CONST. amend. V; TEX. CONST. art. 1, § 14. These prohibitions entail protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same crime after a conviction; and (3) multiple punishments for the same offense. *N. Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794 (1989); *Lopez v. State*, 108 S.W.3d 293, 295–96 (Tex. Crim. App. 2003). When a double jeopardy violation is raised for the first time on appeal, as in this case, the violation must be apparent on the face of record and the "enforcement of the usual rules of procedural default [must] serve legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

Lopez's alleged assaults on Bernadette and Josephine would constitute separate criminal offenses. Therefore, Lopez's only plausible argument for a double jeopardy violation is that the State's argument in this case constituted a prosecution for Lopez's acts regarding Josephine and that the State could not pursue a second prosecution in a subsequent trial. However, the admission of evidence of extraneous crimes or bad acts does not constitute a prosecution but

rather shows the defendant's character, which is relevant to sentencing. *See Lopez v. State*, No. 04-07-00472-CR, 2008 WL 859159, at *2 (Tex. App.—San Antonio Apr. 2, 2008, pet. ref'd).[2]

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

Rebecca Simmons, Justice

PUBLISH

---

[2] At oral argument, counsel for Lopez cited *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001), but that case is highly distinguishable as it does not relate to prosecutorial statements made in closing arguments.