# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

### NO. 03-10-00534-CR
### NO. 03-10-00535-CR

**Raouf Ishak Malek, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
NOS. C-1-CR-09-213428 AND C-1-CR-09-213429,
THE HONORABLE DAVID CRAIN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgments issued herein on December 22, 2011 and substitute the following in lieu thereof.

Appellant, Raouf Ishak Malek, entered pleas of no contest to the offenses of gambling promotion and keeping a gambling place, both Class A misdemeanors, and opted for the court to assess punishment. *See* Tex. Penal Code Ann. §§ 47.03, 47.07 (West 2011). At the conclusion of the punishment hearing, the trial court assessed appellant's punishment for each offense at confinement for 225 days in the county jail. *See id*. § 12.21 (West 2011).

On appeal, appellant raises two points of error, both complaining that his trial counsel provided ineffective assistance during the sentencing proceeding. Because appellant fails to meet his burden of demonstrating ineffective assistance of counsel in either point of error, we affirm the judgments of the trial court.

## I. Background

Appellant left his engineering job and career to establish a full-time illegal gambling enterprise, the Fun Poker Club, which he operated out of his home. Neighbors repeatedly complained about the impact of the ongoing gambling activities on the neighborhood—first to the homeowners association and then, ultimately, to law enforcement. Law enforcement officers conducted an undercover investigation, eventually obtaining a search warrant for the gambling house. When officers executed the search warrant, they found evidence of an extensive, sophisticated, and well-organized gambling operation: multiple poker tables and associated poker equipment, an employee manual, an operating and security manual, documentation of a financing partner, a business plan, a marketing plan, a schedule of operations, and revenue projections.

After the raid of the gambling house, appellant was arrested and subsequently charged by information with gambling promotion and keeping a gambling place. He retained Jesus Gabriel Hernandez, a defense attorney and former patron of the Fun Poker Club, to represent him on these charges. The record contains evidence that during the course of his representation, Hernandez obtained discovery from the State, provided copies of the discovery to appellant for his review,

2

engaged in plea negotiations with the State,[1] discussed trial options with appellant, filed pretrial motions, and prepared for trial.

The record also contains evidence that, throughout his representation, Hernandez advised appellant that he thought his punishment would most likely be community supervision, from either a jury or the judge, but that he could not guarantee such a result. He informed appellant that jail time was a possibility, though he did not think it likely. Hernandez testified that appellant repeatedly rejected an offer of lengthy community supervision until the weekend just before the case was set for jury trial, when he informed Hernandez that he would accept the probation offer. Both appellant and Hernandez thought that the community supervision offer would still be available on the day of trial; however, the prosecutor informed Hernandez that no offer was available.

On the day of trial, appellant entered pleas of no contest to both offenses and waived a jury trial, opting for the court to assess his punishment. At the punishment hearing, the State presented evidence that demonstrated the extensive nature of appellant's illegal gambling enterprise as well as the fact that minors routinely smoked marijuana and drank alcohol while they gambled at the club. The State's evidence also showed that appellant continued running the illegal operation even after an incident in which his club patrons were robbed at gunpoint while they were gambling in his home. Appellant testified on his own behalf, primarily about his educational and employment background and lack of criminal history. According to his testimony, he has a master's degree in

---

[1] Although Hernandez testified at the hearing on the motion for new trial that he had received and passed on to appellant plea offers from the State, the State later stipulated that prosecutors had made no offers. The stipulation indicated that Hernandez had made a plea offer, which prosecutors rejected.

chemical engineering and worked briefly for IBM and ARCO, but quit his job and gave up his profession to become a professional gambler. He admitted that he ran his illegal gambling operation for approximately five or six years—knowing it to be illegal—out of the house his parents owned. Citing the extensive nature of the gambling operation, appellant's knowledge of the illegality of the business, and the negative impact of the poker club on the community, the trial judge sentenced appellant to serve 225 days in jail for each offense.

After sentencing, appellant retained new counsel who filed a motion for new trial, alleging that appellant was denied effective assistance of counsel at the punishment hearing. The trial court conducted a hearing on the motion, but made no ruling. Consequently, the motion was denied by operation of law. *See* Tex. R. App. P. 21.8(c). On appeal, appellant complains of ineffective assistance of counsel.

## II. Discussion

In two points of error, appellant asserts that his trial counsel provided ineffective assistance during the sentencing proceeding. First, appellant argues that his counsel was ineffective because he failed to adequately prepare for the punishment hearing and, further, failed to call character witnesses to testify on appellant's behalf. Second, appellant contends that he suffered ineffective assistance of counsel because his attorney had a conflict of interest that adversely impacted counsel's performance.

4

## A. Ineffective Assistance of Counsel

In his first point of error, appellant complains initially that he suffered ineffective assistance of counsel because his trial counsel failed to prepare for the punishment hearing. He then asserts that his trial counsel was ineffective for failing to call mitigating character witnesses at the punishment hearing. However, appellant fails to demonstrate that counsel's overall performance was deficient or that any alleged deficiency prejudiced him. Accordingly, appellant did not meet his burden under the two-prong *Strickland v. Washington* standard.

### 1. The Standard of Review

To prevail on a claim of ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that: (1) the performance of trial counsel was deficient in that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance of counsel prejudiced the defense—that is, there is a reasonable probability, one sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010); *Branch v. State*, 335 S.W.3d 893, 904-05 (Tex. App.—Austin 2011, pet. ref'd). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez*, 310 S.W.3d at 893; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the purported ineffectiveness.

*Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Thompson*, 9 S.W.3d at 813); *see Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

In reviewing a claim of ineffective assistance, we must evaluate the quality of the representation from the totality of counsel's representation rather than counsel's isolated acts or omissions. *Strickland*, 466 U.S. at 689; *Perez*, 310 S.W.3d at 893; *see Branch*, 335 S.W.3d at 905. Our decision must be based on the facts of the particular case viewed at the time of counsel's conduct so as to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 690; *Martinez*, 330 S.W.3d at 901; *Thompson*, 9 S.W.3d at 813. We must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance—that is, we must presume that trial counsel's actions or inactions and decisions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas*, 163 S.W.3d at 740; *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). The fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004); *see Sessums v. State*, 129 S.W.3d 242, 246 (Tex. App.—Texarkana 2004, pet. ref'd).

In addition, the burden is on the appellant to affirmatively demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 687). To overcome the presumption that counsel rendered adequate assistance, the appellant must identify the specific acts or omissions of counsel that allegedly constitute ineffective assistance and then

6

affirmatively prove that they fall below the professional norm for reasonableness. *Strickland*, 466 U.S. at 690; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Even if an appellant shows that particular errors of counsel were unreasonable, the appellant must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693-95; *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). Merely showing that the errors had some conceivable effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Martinez*, 330 S.W.3d at 901. The appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. *Strickland*, 466 U.S. at 695.

2. *Representation by Hernandez*

In asserting that his trial counsel failed to prepare for the punishment hearing, appellant contends that Hernandez's representation was non-existent. The record, however, does not support such a conclusion. The record contains evidence that, during the course of his representation, Hernandez met with the State's attorney, engaged in plea negotiations, communicated plea offers to appellant and made counteroffers to the State, reviewed trial options with appellant discussing the pros and cons of a trial to a jury or to the judge, reviewed the punishment range with appellant, filed relevant pretrial motions, discussed trial strategies with defense counsel representing appellant's co-defendants, obtained discovery and supplemental discovery well in advance of trial, provided the discovery to appellant for review, and prepared for trial by reviewing the voluminous discovery, thinking about different trial strategies, considering ways to attack the State's arguments,

7

thinking about different defenses, preparing questions to ask witnesses, preparing appellant to testify at trial, and discussing character evidence with appellant.[2]

Although Hernandez testified at the hearing on the motion for new trial that he was not prepared for a punishment hearing, the context of his testimony merely indicates that Hernandez did not anticipate a punishment hearing because he thought appellant would be accepting the State's plea bargain offer. At the time of the punishment hearing, when asked by the trial court if both sides were "a hundred percent ready," Hernandez affirmatively indicated that he was ready. While Hernandez may have suggested that he had not done anything to prepare specifically for a punishment hearing following a plea, the record reflects that he was in fact prepared for a full trial based upon all that he had done throughout the course of his representation of appellant. The record demonstrates that Hernandez was thoroughly familiar with the facts of the case and provided satisfactory representation to his client. He had a clear trial strategy that, although ultimately unsuccessful in obtaining community supervision for appellant, we cannot say was unreasonable.

Also in his first point of error, appellant asserts that his trial counsel was ineffective for failing to call mitigating character witnesses at the punishment hearing. At the hearing on the motion for new trial, five witnesses testified about appellant's good character: a longtime friend, his girlfriend, both of his parents, and his younger brother. Appellant argues on appeal that these witnesses were available to testify at the punishment hearing about his family, educational, and religious background, his acts of kindness and generosity, and his positive influence on the lives of

---

[2] It was during Hernandez's final trial preparations the weekend before trial was scheduled that appellant indicated that he wanted to accept the community supervision offer.

others. Therefore, he maintains, his trial counsel was ineffective for failing to call them to testify as mitigating witnesses.

First, we note that the record reflects that appellant did not want his friends or family members involved in the trial. Accordingly, he is not in a position to complain about counsel's failure to involve them. *See Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) (counsel will not be deemed ineffective for following client's wishes, so long as client made an informed decision). Second, the record is silent as to counsel's reasons for not calling these witnesses. The decision whether to present witnesses is largely a matter of trial strategy. *Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "[A]n attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant." *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007) (citing *Weisinger v. State*, 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd)). Counsel was never directly asked about his decision not to call appellant's friends and family to testify at the punishment hearing. During questioning by the State, Hernandez indicated possible concerns about calling appellant's parents to testify.[3] Other than that, however, the record is silent as to Hernandez's reasoning. When the record is silent as to the motivations underlying counsel's

---

[3] These concerns appear to have been related to the fact that their unemployed son was using the proceeds from his illegal gambling enterprise to pay them for the home mortgage payments they, as the home owners, were making as well as from the fact that he was using their house for illegal purposes and had been doing so for years without their knowledge.

decisions, the defendant usually cannot overcome the strong presumption that counsel's conduct was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Hernandez may well have concluded that the testimony of appellant's family and friends could have been harmful. Not one of these five witnesses was aware of the nature of the offenses appellant committed or the extent of his ongoing illegal gambling enterprise. This reveals that appellant deceived those whom he was closest to for an extended period of time. Counsel could have decided that exposing the extremely deceitful nature of appellant's conduct would not have been helpful.

Moreover, the "failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *Perez*, 310 S.W.3d at 894 (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). While it is true that these witnesses generally testified about appellant's good character, their testimony could just as easily have harmed appellant because the evidence they offered revealed that appellant had no need to resort to criminal activity. Rather, their testimony demonstrated that appellant made a conscious choice to abandon a promising career, ignore the benefits of his education, reject his religious teachings, and deceive his friends and family in order to purposefully engage in ongoing criminal activity.

The record reveals that counsel's trial strategy was to focus more on the nature of the offenses rather than the character of the offender. Hernandez attempted to minimize the seriousness of the offenses instead of emphasizing appellant's character. The fact that this strategy ultimately proved unsuccessful does not render counsel's assistance ineffective.

10

Mitigating character evidence may be helpful to show that a defendant's criminal conduct was an isolated aberration of otherwise good character. Here, however, appellant engaged in ongoing criminal activity for a period of five to six years. Counsel may well have determined that mitigation evidence of the type offered at the motion for new trial hearing would not have convincingly shown that appellant's offenses were an aberration. Indeed, the ongoing nature of the offenses suggests that appellant's criminal conduct was not an aberration but rather the norm and behavior that was entirely consistent with his character. Appellant's own testimony revealed that his character was such that he was willing to knowingly and repeatedly engage in criminal conduct for an extended period of time. In addition, mitigating evidence ordinarily offers a reason or explanation for why a defendant engaged in criminal conduct, perhaps lessening the individual's moral culpability. Here, the testimony of these character witnesses fails to offer any explanation for appellant's behavior. In fact, their testimony emphasizes the fact that appellant had no reason to engage in criminal conduct but simply chose a life of crime. Thus, Hernandez could have concluded that, rather than lessening appellant's culpability, this testimony could serve to increase his culpability.

We are not convinced that appellant necessarily would have benefitted from the testimony of the five witnesses presented at the motion for new trial hearing. Further, we do not see a reasonable probability that their testimony would have changed the result of appellant's punishment hearing.[4] Appellant has failed to demonstrate deficient performance on the part of his

---

[4] We note that the trial court judge who conducted the hearing on the motion for new trial was the same judge who heard the evidence in the punishment hearing and assessed the jail time

11

defense counsel, and, moreover, has failed to show any prejudice to his defense.  Accordingly, he has failed to meet the two-prong *Strickland* standard.  We overrule his first point of error.

## B.  *Ineffective Assistance Due to Conflict of Interest*

In his second point of error, appellant asserts that his counsel had an actual conflict of interest because several years earlier Hernandez had gambled at his house.  However, appellant fails to demonstrate that an actual conflict of interest adversely affected his counsel's performance.  The record does not show that Hernandez advanced his own interest to appellant's detriment.  Thus, appellant did not meet his burden under *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

### 1.  *The Standard of Review*

When an appellant asserts that the ineffective assistance of his counsel derived from a conflict of interest, we do not apply the two-part standard of *Strickland v. Washington* but instead use a separate standard to analyze the claim.  *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007); *see Strickland*, 466 U.S. at 692; *Cuyler*, 446 U.S. at 349-50 (1980).  Under the *Cuyler* standard, an appellant must show that:  (1) counsel had an actual conflict of interest, and (2) that conflict adversely affected counsel's performance at trial.  *Cuyler*, 446 U.S. at 350; *Acosta*, 233 S.W.3d at 355.  If an appellant shows both elements, prejudice is presumed.  *Cuyler*, 446 U.S. at 349-50; *Routier v. State*, 112 S.W.3d 554, 582 (Tex. Crim. App. 2003).

---

sentences.  Yet, after hearing the mitigating character evidence presented at the motion for new trial hearing, he did not opt to grant the motion for new trial.

12

An actual conflict of interest exists if counsel "'is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest.'" *Acosta*, 233 S.W.3d at 355 (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)); *see also Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (clarifying the phrase "actual conflict of interest" in the Court's remand instruction in a previous case by stating "we think 'an actual conflict of interest' meant precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties"). A showing of a potential conflict of interest is not sufficient to constitute an actual conflict of interest. *Ex parte McFarland*, 163 S.W.3d 743, 759 n. 52 (Tex. Crim. App. 2005); *James v. State*, 763 S.W.2d 776, 780 (Tex. Crim. App. 1989) ("potential, speculative conflicts of interest" may not be "elevated to the position of actual, significant conflicts").

"[A] potential conflict may become an actual conflict, but [an appellate court need not] speculate about a strategy an attorney might have pursued . . . in the absence of some showing that the potential conflict became an actual conflict." *Routier*, 112 S.W.3d at 585 (referencing the analysis in *James*, 763 S.W.2d at 781). "'[U]ntil a defendant shows that his counsel *actively represented conflicting interests*, he has not established the constitutional predicate for his claim of ineffective assistance.'" *Acosta*, 233 S.W.3d at 355 (quoting *Cuyler*, 446 U.S. at 349-50) (emphasis in original). An appellant cannot obtain a reversal on appeal unless he shows that his attorney was operating under an actual conflict of interest that adversely affected counsel's performance. *Cuyler*, 446 U.S. at 348; *Routier*, 112 S.W.3d at 581-82.

To show that an actual conflict of interest adversely affected counsel's performance, the appellant must show "that trial counsel actually acted on behalf of those other interests during the trial." *Acosta*, 233 S.W.3d 355-56. "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as 'eliciting (or failing to elicit) evidence helpful to one [interest] but harmful to the other.' " *Lopez v. State*, No. 04-10-00562-CR, 2011 WL 3847241, at *2 (Tex. App.—San Antonio Aug. 31, 2011, no pet.) (citing *Gaston v. State*, 136 S.W.3d 315, 318 (Tex App.—Houston [1st Dist.] 2004, pet. struck) (en banc)); *see State v. Hart*, 342 S.W.3d 659, 665 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Ramirez v. State*, 13 S.W.3d 482, 488 (Tex. App.—Corpus Christi 2000), *pet. dism'd, improvidently granted*, 67 S.W.3d 177 (Tex. Crim. App. 2001). The appellant must show that his trial counsel "had to forego a strategy in the appellant's trial that counsel would have otherwise pursued if he had not represented [a conflicting interest]." *See Routier*, 112 S.W.3d at 586.

### 2. Cuyler Standard Not Met

Appellant claims that his defense counsel had an actual conflict because several years earlier Hernandez had gambled at his house at the Fun Poker Club. But the mere fact that Hernandez had prior gambling connections with appellant does not prove an actual conflict. *See Routier*, 112 S.W.3d at 581. An actual conflict of interest means a conflict that did in fact affect counsel's performance, not merely a theoretical division of loyalties. Appellant must show that Hernandez advanced his interest to the detriment of appellant's interest. *See Acosta*, 233 S.W.3d at 355.

Appellant theorizes that Hernandez had an actual conflict because counsel feared exposure of his previous criminal gambling conduct. He maintains that his counsel provided false

information because of his desire to avoid a trial that would expose his prior gambling offenses. Appellant characterizes Hernandez's professional opinion that appellant would probably get community supervision as false information and further asserts that Hernandez lied to him about the plea offer made by the State.

First, the record reflects that Hernandez communicated his professional opinion about the probability of appellant's receiving community supervision but made no guarantees. Just because his opinion ultimately proved to be incorrect does not mean that Hernandez provided false information to his client. Second, while there is some confusion as to when and by whom a plea bargain offer was made, the record contains evidence that Hernandez did in fact engage in plea negotiations with the State. During the hearing on the motion for new trial, the State questioned Hernandez about counteroffers appellant made that were rejected by the State. Logically, if counteroffers were made by the defense, an original offer had initially been extended by the State. Hernandez's advice to wait and see if the plea bargain offer improved was based upon his experience that, as the prosecutor acknowledged, offers will often improve during the course of plea negotiations and as the trial date approaches. Contrary to appellant's assertion, the record does not reflect any attempt by Hernandez to dupe appellant or to prevent a trial to avoid exposure of his prior criminal gambling.

In fact, the record reflects that Hernandez did not fear that his gambling conduct would be exposed. During the punishment hearing counsel actually questioned one of the State's witnesses, appellant's co-defendant, about the witness's prior acquaintance with Hernandez when that acquaintanceship was based upon their gambling association. While not specifically mentioning

15

the fact that they knew each other from the Fun Poker Club, Hernandez asked this witness about their long-time acquaintance prior to appellant's arrest—after the State had established that this witness knew appellant because he played at poker games run by appellant and then began dealing for appellant. Counsel's questions of this witness could have easily exposed his prior gambling.

Further, Hernandez testified at the hearing on the motion for new trial that his prior gambling connection with appellant did not hinder his representation of appellant because he "never considered that." Additionally, the record reflects that Hernandez had no fear of prosecution for his prior gambling conduct because he knew, based upon his experience, that Travis County normally prosecuted only the "runners and dealer," not the individual gamblers. Appellant only speculates that Hernandez had an interest in preventing the exposure of his prior gambling conduct. The record itself does not reflect that Hernandez actually had such an interest. Nor does the record reflect that Hernandez advanced this purported interest over appellant's interest.

Appellant's interest in these cases was to receive community supervision as punishment for his criminal conduct. Appellant conceded at the hearing on the motion for new trial that he had no defense to the charges themselves. Thus, the only genuine issue in this case was the issue of punishment. Appellant's primary concern was avoiding jail. The record reflects that Hernandez zealously advanced this interest at the punishment hearing.

Hernandez's trial strategy was to demonstrate that these offenses were not jail-worthy crimes by emphasizing the social aspect of the poker games and the safe atmosphere of the club. Hernandez also attempted to demonstrate that appellant was not a jail-worthy individual by producing evidence of his good character, particularly his education and employment background

16

and lack of criminal history. Though this strategy was ultimately not successful, the record does not show that following this trial strategy in any way advanced any purported interest of Hernandez's over that of appellant. Appellant fails to identify, and the record does not show, how Hernandez advanced any other interest to appellant's detriment. *See Gaston*, 136 S.W.3d at 318. Therefore, we hold that Hernandez's prior gambling connection to appellant did not become an actual conflict of interest. *See Acosta*, 233 S.W.3d at 355; *Routier*, 112 S.W.3d at 582.

Furthermore, even assuming *arguendo* that an actual conflict of interest existed, appellant also fails to show that the actual conflict had an adverse effect on Hernandez's performance. *See Mitchell*, 989 S.W.2d at 748. Appellant argues that Hernandez's cross-examination of the State's witnesses may have been chilled because he feared exposure of his prior gambling conduct. However, the record does not support this conclusion. The record reflects that Hernandez never had concerns about such exposure or even a concern about being prosecuted for his gambling conduct. Furthermore, appellant fails to indicate how the cross-examination of the State's witnesses should have been conducted, nor does he identify what areas, topics, or questions were left unexplored. Appellant has not shown any adverse effect on defense counsel's performance, and thus we do not presume prejudice. *See Mitchell*, 989 S.W.2d at 748.

Appellant fails to show that his defense counsel had an actual conflict of interest or that his defense suffered an adverse effect. Therefore, he has failed to meet the 'actual conflict' and 'adverse effect' standard of *Cuyler* and fails to establish ineffective assistance of counsel due to a conflict of interest. We overrule his second point of error.

17

### III. Conclusion

Appellant has failed to demonstrate that he suffered ineffective assistance of counsel during the sentencing proceeding. Accordingly, we overrule his two points of error and affirm the judgments of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed on Motion for Rehearing

Filed: February 1, 2012

Do Not Publish