

# NUMBER 13-23-00326-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GENOVEVA A. GARCIA,                                              Appellant,

**v.**

THE STATE OF TEXAS,                                              Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 13
## OF BEXAR COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellant Genoveva A. Garcia appeals her conviction for assault causing bodily injury to a family or household member, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01. A jury found her guilty as charged, and the trial court imposed a one-year suspended sentence, probated for two years' community supervision. By one issue,

Garcia argues that her trial counsel was ineffective. We affirm.

## I.  BACKGROUND[1]

Garcia was charged by information with assaulting Sara Lovell on or about November 11, 2022, by "STRIKING THE COMPLAINANT WITH THE HAND OF THE DEFENDANT." During a one-day trial, the following evidence was adduced.[2]

Alexandria Aldaco, an officer with the San Antonio Police Department, testified that at approximately 7:30 p.m. on November 11, 2022, she was dispatched to an apartment complex in San Antonio, Texas. Officer Aldaco testified that she had received information that there were "two cousins; one was upstairs, one was downstairs," and "there was a possible indicator that a child was being harmed upstairs." When Officer Aldaco spoke with the cousin upstairs, identified as Sara, her "first observations were [Sara] looked like she had been crying, like she was in a form of distress. She just seemed very hurt and very emotional at the time." According to Officer Aldaco, Sara "said that there had been

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] We note that although the information lists the offense as "ASSAULT BODILY INJURY – FAM/HOUSEHOLD," it does not specifically allege that Sara was related to Garcia. *See, e.g.,* TEX. FAM. CODE § 71.003 (defining "family" to include "individuals related by consanguinity or affinity, as determined under Sections 573.022 and 573.024, Government Code," among other definitions). Further, the jury instructions do not refer to this element of the offense. However, the judgment in the case reflects a conviction for "ASSAULT BODILY INJURY – FAM/HOU." Garcia does not complain about this on appeal, and the record reflects that the family relation was not seriously in dispute. In its opening, the State explicitly argued that the case was about "an assault bodily injury against a family member." Furthermore, Garcia testified on her on behalf and stated that Sara was her "cousin." Garcia has not raised the issue of sufficiency of the evidence with this Court. Accordingly, modification is unnecessary. *Cf. Delarosa v. State*, 677 S.W.3d 668, 671 (Tex. Crim. App. 2023), *reh'g denied* (Dec. 20, 2023) (concluding, in a case where appellant raised a sufficiency claim, that a statutory offense being listed in the heading of an indictment, but without any corresponding allegations in the body, is not sufficient to allege that offense under a sufficiency review); *see also* TEX. R. APP. P. 38.1(f) ("The brief must state concisely *all issues or points presented for review*." (emphasis added)).

2

an assault. She had a fight with her cousin that lives downstairs." Officer Aldaco stated that she "s[aw] redness on [Sara's] left side" when she arrived. Officer Aldaco did not notice any injuries on the child, or otherwise see the child in distress. After speaking with Sara, Officer Aldaco went downstairs to speak with the other cousin, Garcia. When Officer Aldaco approached Garcia, "[Garcia] seemed also emotional, but more like heated, like a little bit amped-up more than [Sara]." According to Officer Aldaco, Garcia explained to her that she had gone upstairs because she had heard arguing between Sara and her husband and was concerned for the safety of their children. When she knocked on the door to raise these concerns with Sara, Sara "got close to her and . . . did like a chest bump." Officer Aldaco stated that Garcia then said the phrase "two-piece" and "she did like a hand motion, like a one, two," indicating that she physically struck Sara. After speaking with Sara again as part of her investigation, Officer Aldaco arrested Garcia for assault.

Sara testified that at the time of the incident, she was living in the upstairs apartment with her three children and her then-husband. According to Sara, she and her daughter got into an argument over her daughter's behavior toward her father at the grocery store, during which time Garcia knocked on her door asking "what [was] going on." Sara did not respond, but when Garcia implied that Sara's children were in danger, Sara told her, with the door still closed, "If you're worried about the kids, then please stop smoking marijuana because they don't like that smell." Sara then opened the door so that Garcia could see that the children were safe.

Sara could not recall the precise sequence of events, testifying as follows:

I just remember at some point, I don't know if I reiterated about the smoking

3

or not, but I believe that that is what I said. You know, if you are concerned about my kids, then stop smoking because they don't like the smell. And what I can recall from when the attack started was that she brought her fist up and started calling me a B and went towards me. So I'm still like in the stairs in between where my door is open. And I remember I curled back like that (indicating).

At that point, my husband, my daughter, and I believe one of [Garcia's] daughters—I'm not sure. Next I know like they are trying to separate us. And when my head raises up, I can feel blood dripping. I went like this (indicating).

I'm going to call the cops. You are going to go to jail. I ran to the restroom because I can see my other two children there crying, and so I wanted—I didn't want them to see me all bloody.

Sara testified that she was struck "a good five, six times," each time "with a closed fist." Sara testified that she felt "stun[ned]" and was "in shock." She testified about her injuries, photographs of which the State entered into evidence. She testified that she suffered: a "scratch around [her] nose"; a scratch on her head; a swollen lip; bruises on her check and nose; and "a bump on [her] head."

Sara's daughter Jadelyn Lovell, or Jade, also testified. She corroborated Sara's version of events, and specifically recalled that once Sara had opened the door and she and Garcia were speaking in the doorway,

the next thing I see is [Garcia] grabbing my mother's hair, and I saw fist[ ]fighting from [Garcia]. And then I got up, and I was like—I was pulling my mom back. I was telling them to stop. And my dad too was helping get my mom back in the house, because she did not want to let go of her hair, and that's what I remember.

Jade affirmed that Sara was not "being aggressive towards" Garcia, and that Garcia was the first person who attacked. Jade testified that Garcia struck Sara "several" times "[w]ith the hand, fist[,] and pulling hair."

Garcia's daughter, Esperanza Soto, who was nineteen at the time of her testimony,

4

testified that she lived with her mother downstairs from Sara on the date of the incident. Soto disputed Sara's version of events, testifying that Sara was the initial aggressor, threw an onion at Garcia, and "grabbed [her] . . . from the neck down," at which point Garcia "quickly went into defense mode." On cross examination, the State pointed to inconsistencies between Soto's trial testimony and her prior statements to police. For example, there is no mention of Sara throwing an onion in the police report. The State also questioned Soto's ability to visually perceive the events given that she had indicated to police that she was downstairs, and not upstairs, at the time of the incident.

Garcia testified on her own behalf. She testified that while she and Sara were arguing in the doorway, Sara began "frantically yelling and cussing," and as Garcia peeked her head into the apartment to check on Jade, "Sara attacked [her]." According to Garcia, Sara repeatedly chest bumped her, grabbed her by the neck, and "attempt[ed] to check" her. After warning Sara that if she continued her aggression she would be "forced to respond," Garcia then struck Sara "about three times."

After being instructed on self-defense as a justification, the jury found Garcia guilty, and the trial court imposed a one-year suspended sentence, probated for two years' community supervision. This appeal followed.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

By one issue and various sub-issues, Garcia argues that her trial counsel was ineffective. In particular, she argues that counsel: "repeatedly disregarded the Texas Rules of Evidence prohibiting hearsay during his witness examinations," "failed to lodge a timely and specific objection when the State elicited inadmissible hearsay from [Officer] Aldaco," "failed to lodge a timely and specific objection when the State referred to facts

5

not in evidence while cross-examining appellant and later emphasized those same 'facts' during closing remarks," and "failed to make a timely and specific objection during closing remarks when the State affirmatively denied certain facts that *were* previously entered into evidence." Lastly, Garcia argues that

> [a]lthough he did move for a mistrial after jurors twice indicated they were deadlocked 5-1, counsel then failed either to: (1) renew any further mistrial motion as deliberations continued; or (2) document the total interval spent in deliberations to show that the trial court abused its discretion in denying the single mistrial motion that was made below.

## A.    Standard of Review and Applicable Law

To reverse a conviction based on ineffective assistance of counsel, we must find: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced. *Andrus v. Texas*, 590 U.S. 806, 813 (2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)); *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022). "Prejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney*, 663 S.W.3d at 90. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Additionally, any claim for ineffectiveness of counsel "must be firmly founded in the record[,] and the record must affirmatively demonstrate the alleged ineffectiveness." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citations omitted). "[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *see Navarro v. State*, 623 S.W.3d 97, 110 (Tex. App.—Austin 2021, pet. ref'd) ("If trial counsel has not been afforded the opportunity to explain the

6

reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" (quoting *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013)). A defendant's inability to make a showing under either *Strickland* prong defeats a claim for ineffective assistance. *Johnson*, 624 S.W.3d at 586.

## B. Discussion

As the State correctly notes, "[t]he record is silent regarding trial counsel's reasoning for each of the errors which [Garcia] alleges." Garcia did not file a motion for new trial alleging ineffective assistance of counsel, nor did she otherwise develop a record to resolve these issues on direct appeal. *Cf. Lopez v. State*, 358 S.W.3d 691, 697 (Tex. App.—San Antonio 2011, pet. ref'd) (noting that trial counsel testified at a hearing on defendant's motion for new trial and was questioned regarding his reasons for failing to object to certain statements in the State's closing argument). Moreover, the alleged deficiencies were not "so outrageous that no competent attorney would have engaged in [them]." *Navarro*, 623 S.W.3d at 110.

Because trial counsel has not been afforded an opportunity to explain the reasoning behind the complained-of conduct, we cannot say that counsel's alleged deficiencies are firmly rooted in the record such as to defeat the "strong presumption" of reasonable representation. *See Strickland*, 466 U.S. at 689. As the Texas Court of Criminal Appeals recently clarified: "[T]he question is not whether the record is consistent [with a *Strickland* violation]: the question is whether the [deficiency or] prejudice suffered is 'firmly founded' in the record." *Tanner v. State*, 707 S.W.3d 371, 378 (Tex. Crim. App. 2024) (faulting the appellate court for sustaining an ineffective assistance of counsel claim

7

on direct appeal because "the allegation of ineffectiveness [was] not 'firmly founded' in the record"). Thus, here, the record fails to rebut the presumption of reasonableness. *See Johnson*, 624 S.W.3d at 586; *see also Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) ("The record in the case at bar is silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay. Therefore, appellant has failed to rebut the presumption this was a reasonable decision."); *Evans v. State*, 60 S.W.3d 269, 273 (Tex. App.—Amarillo 2001, pet. ref'd) (noting that trial counsel's decision to object during closing argument is "frequently a matter of legitimate trial strategy," and noting that without any "indicat[ion] why counsel at bar withheld objection, . . . we cannot say that the record before us sufficiently rebuts the strong presumption that counsel exercised reasonable professional judgment").

For all the above reasons, we overrule Garcia's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of July, 2025.