

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RAMON MONTOYA, JR., | § | No. 08-17-00196-CR |
| Appellant, | § | Appeal from the |
| v. | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20140D05060) |

## <u>MEMORANDUM OPINION</u>

Appellant Ramon Montoya, Jr. was convicted of two counts of aggravated robbery and sentenced to fifty-seven years in prison. *See* TEX. PENAL CODE ANN. § 29.03. On appeal he raises four issues, seeking reversal based on improper jury argument, a premature *Allen* charge, ineffective assistance of counsel, and the erroneous admission of evidence during the punishment phase. Finding no reversible error, we affirm.

### Background

Appellant entered a 7-11 convenience store and asked the clerk behind the cash register for black trash bags. The clerk responded that the store only had white trash bags. Appellant then approached the register and pulled out a handgun. He told the clerk: "Give me all your money." In fear for her life, she complied.

As this was happening, a veteran with post-traumatic stress disorder entered the store, holding a $20 bill in his hand and intending to buy beer. Appellant put his gun to the veteran's chest and told him to hand over his money. The veteran handed over the money, afraid that Appellant would shoot him. The robberies were captured on security video.

The El Paso Police Department investigated the robberies and identified Appellant as a suspect. Sergeant Robert Hernandez contacted the store clerk to arrange for her to view a photo lineup that included Appellant. Another officer, Detective Fernando Carrasco, showed the lineup to the clerk. Appellant was identified as the perpetrator by the clerk, who told Sergeant Hernandez that she was "a hundred percent" about her identification. The clerk signed a lineup viewing form that documented which photograph she identified, and on a blank provided for "Identification comments / Level of certainty," somebody wrote "Yes."

At trial, Appellant was positively identified in the courtroom as the robber by both complaining witnesses—the clerk and the veteran. The clerk stated that she was "one hundred percent" certain that Appellant was the perpetrator. The veteran stated there was no doubt in his mind about his identification of Appellant. On cross-examination, the veteran testified that the first time he ever identified Appellant as the robber was when he spoke to the district attorney's office two days before his trial testimony. He "never did a photo lineup with the police," and he had "never been shown pictures" of Appellant and asked if he was the "the one who did it."

The defense called no witnesses. A jury found Appellant guilty of two counts of aggravated robbery. After hearing additional evidence, the jury sentenced him to fifty-seven years in prison. This appeal followed.

**Analysis**

Appellant contends that the State made improper jury argument by referencing facts outside the record, and that the trial court committed egregious error by giving the jury a premature *Allen* charge. He also complains of ineffective assistance of counsel due to an alleged conflict of interest held by one of his trial lawyers, and that during the punishment phase of trial the trial court improperly admitted hearsay evidence from his inmate records.

**I.      Improper jury argument**

In closing arguments, defense counsel focused on law enforcement's identification of Appellant as a suspect, particularly the genesis of a photographic lineup that had been used by law enforcement during the investigation. Referring to the two eyewitnesses who testified at trial, defense counsel argued that "these people, they want to help but I don't think they're completely sure." With respect to the store clerk, counsel argued: "this lineup they're talking about where she says I'm 100 percent certain and . . . you have this [lineup viewing form] here where it says what's your level of certainty and she just merely put yes. There's no certainty that she's 100 percent, 10 percent, 15 percent. It just says yes." With respect to the veteran, counsel argued: "it's unfair because he does have PTSD and it's pretty clear that it does affect his memory." Counsel argued that law enforcement never spoke to the veteran after the robbery until he met with the prosecutors. "He reviews all the evidence, everything that they've put on today and at that point he says I'm confident to identify somebody."

In response, the State reiterated that the clerk told an investigating law enforcement officer, after viewing the photographic line-up of suspects, that she "was 100 percent" about identifying Appellant in the lineup. Appellant objected to the reference to "100 percent" as misleading the jury about the evidence. The trial court overruled the objection.

The State also addressed the circumstances leading to the veteran's courtroom identification of Appellant, arguing:

> I guarantee you, we never showed a lineup to him. There is no way we would ever do that. That would be improper. He has never – and he testified he has never seen a lineup. . . . I believe he told you he came down – he flew down here from Illinois. He's not here so of course the first time we're going to talk to him is on Sunday.

Defense counsel objected that the State was "arguing outside the evidence." The trial court overruled the objection.

"Proper jury argument includes (1) summary of the evidence presented at trial, (2) reasonable deductions drawn from that evidence, (3) answers to opposing counsel's arguments, and (4) pleas for law enforcement." *Castruita v. State*, No. 08-16-00030-CR, 2018 WL 3629382, at *13 (Tex.App.—El Paso July 31, 2018, pet. ref'd)(citing *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000)). "A prosecuting attorney is permitted in argument to draw all inferences from the facts in evidence which are reasonable, fair and legitimate, and offered in good faith." *Id*. (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App. 1997)). "However, the prosecutor may not use jury argument to get before the jury, either directly or indirectly, evidence which is outside the record." *Id*. (citing *Borjan v. State*, 787 S.W.2d 53, 57 (Tex.Crim.App. 1990)). A trial court's ruling on an objection asserting improper jury argument is reviewed for abuse of discretion. *See id*. (citing *Davis v. State*, 329 S.W.3d 798, 825 (Tex.Crim.App. 2010)).

The trial court did not abuse its discretion by overruling the objection to the prosecutor's accurate summary of the evidence that the clerk told Sergeant Hernandez that she was 100% certain of her identification of Appellant in the lineup. Similarly, there was no abuse of discretion in the State's denial that prosecutors had shown the lineup to the veteran, in response to opposing counsel's suggestion that they had done so shortly before trial. This was both an answer to

4

opposing counsel's argument and a summary of evidence at trial, in which the veteran testified had "never been shown pictures" of Appellant and asked if he was "the one who did it."

The only aspect of the State's argument that was not grounded in evidence presented at trial was the statement that the veteran had flown in from Illinois to testify. This was a response to opposing counsel's argument, supplying additional context to explain the circumstances of the witness's testimony about his pretrial meeting with prosecutors. The fact that the witness traveled from out of state to present trial testimony had no relevance to any element of the charged offenses. But even to the extent this collateral information could be considered an impermissible injection of evidence outside the record to bolster the credibility of a witness, any error in overruling the objection did not affect Appellant's substantial rights sufficiently to justify reversal. *See* TEX.R.APP.P. 44.2(b). Determining harm arising from improper argument requires balancing three factors: (1) severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex.Crim.App. 2000)(citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998)). The alleged misconduct of informing the jury that a witness had flown in from Illinois was not severe, and although the trial court undertook no curative measure, it is exceptionally unlikely that this information affected the certainty of Appellant's conviction in light of the in-court identification of Appellant by the two complaining witnesses. We therefore overrule Appellant's first issue.

## II.    *Allen* **charge**

Appellant contends that the trial court committed egregious error by giving the jury an *Allen* charge.[1] After closing arguments, the jury began its deliberations. Shortly after 10:00 a.m.,

---

[1] *See Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896)(permitting a supplemental jury instruction that reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve); *Barnett v. State*, 189 S.W.3d 272, 277

the jury sent a note requesting all the evidence. An hour and a half later, another note sought permission to go to lunch. The jury returned from lunch at 12:45 p.m., deliberations resumed, and the jury sent a note shortly after asking if they could "request additional information that was not submitted as evidence in the courtroom." The trial judge referred the jury to the evidence and the charge.

At 1:46 p.m., the jury sent another note, stating: "We can not come to an agreement. Please advise." The trial judge read the note to counsel and proposed to send the jury an *Allen* charge. The text of the instruction read:

> This is in response to your last note, in which you indicate that you are at a real impasse.

> If this jury finds it is unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury.

> This indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been empanelled and will likely hear the same evidence presented to this jury. The questions to be determined by that jury will be the same questions confronting you and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.

> With this additional instruction, you are instructed to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury if you can do so without doing violence to your conscience.

The judge asked if the State objected. A prosecutor stated: "No objection, Your Honor." Defense counsel then stated: "That's fine, Judge." The judge then noted that the form instruction had signature lines to indicate approval by counsel, and they could sign it or he would "send it back

(Tex.Crim.App. 2006).

6

there." Defense counsel stated: "Whatever you want, Judge." The prosecutor stated: "I don't care, Your Honor." Defense counsel then stated: "You can send it back, Judge."

The instruction was then given to the jury. At 2:39 p.m., the jury notified the judge that they had "come to a total agreement," and they delivered their verdicts finding Appellant guilty on both counts.

Appellant contends that the trial judge committed egregious error by prematurely giving the *Allen* charge. The State contends that Appellant cannot obtain a reversal based on invited error, and also that because of the absence of coercion, there was no error in the court's instruction.

In the absence of an objection at trial, a reversal for charge error is warranted only if the instruction constituted fundamental error so egregious and harmful that the defendant did not have a fair and impartial trial. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex.Crim.App. 2009). So long as an *Allen* charge is not coercive, to demonstrate error an accused must show that jury coercion or misconduct occurred in fact. *See Love v. State*, 909 S.W.2d 930, 936 (Tex.App.—El Paso 1995, pet. ref'd).

Appellant's argument is focused on the amount of time the jury spent deliberating before the *Allen* charge was given—approximately two-and-a-half hours by his calculation—characterizing the instruction as premature. He relies on *Grigsby v. State*, 257 S.W.2d 110 (Tex.Crim.App. 1953), arguing that the case stands for the proposition that a court abused its discretion by declaring a mistrial based on a jury's inability to agree after one hour and forty-five minutes of deliberation. But *Grigsby* did not hold that an *Allen* charge would be premature before any particular amount of time passed for deliberations. Rather, the case held merely that it was premature to discharge a jury because of purported inability to agree after only one hour and forty-

7

five minutes of deliberations, particularly in the absence of any order declaring a mistrial justified by supporting findings of fact. *See Grigsby*, 257 S.W.2d at 110.

The remainder of Appellant's argument asserts in conclusory fashion, without supporting evidence, argument, or legal authority, that the timing of the *Allen* charge both denied him his Sixth Amendment right to a fair and impartial jury and "unduly coerced the jury and pressured jurors into reaching a verdict." The full text of the Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. CONST. AMEND. VI.

Nothing in the text of the Sixth Amendment addresses the circumstances of giving an *Allen* charge, and Appellant has provided no authority suggesting that it does.

As for coercion, this Court has held previously that substantially the same language used in the instruction to the jury is non-coercive. *See Love*, 909 S.W.2d at 936; *see also Arrevalo v. State*, 489 S.W.2d 569, 571–72 (Tex.Crim.App. 1973). This Court has affirmed giving the *Allen* instruction even before the beginning of jury deliberations, and Appellant offers no evidence, argument, or authority to demonstrate that the particular language, timing, or other context of the *Allen* charge in this case tended to coerce the jury to reach a verdict or result in any other misconduct. *See Perez v. State*, No. 08-12-00340-CR, 2015 WL 4940375, at *13 (Tex.App.—El Paso Aug. 19, 2015, no pet.); *Love*, 909 S.W.2d at 936-37.

Appellant has failed to identify any fundamental error concerning the *Allen* charge, which was given to the jury without objection. We therefore overrule his second issue.

### III. Ineffective assistance of counsel due to conflict of interest

Appellant argues that he received ineffective assistance of counsel because of a conflict of interest. The trial court appointed attorney Francisco Guzman to represent Appellant. At trial another attorney, public defender Brian Rodriguez, also appeared on behalf of Appellant. In a bench conference during the guilt-innocence phase of trial, and outside the presence of the jury, El Paso Police Department Detective Rex Parsons revealed that his identification of Appellant as a suspect had not relied solely upon the complaining witnesses' physical descriptions of the robber; the investigators had received information from Appellant's "half brother." This information was not elicited before the jury during the guilt-innocence phase.

After Appellant was found guilty on both counts of aggravated robbery, and during the first day of the sentencing phase of trial, the State asked Detective Parsons to name people he questioned during his investigation of the robbery. He testified that he "spoke with the defendant's half brother," who at the time had been a juvenile. Detective Parsons also testified that his investigation revealed that an outdoor camera filmed the "getaway vehicle," identified as a brown Dodge Intrepid that he saw in several videos of different robberies.

During cross-examination of Detective Parsons, Guzman explored the half-brother's connection to the investigation. He asked: "So how did you get to talk to him, to Mr. Montoya's brother?" Detective Parsons responded that his boss encountered him while investigating robberies, and that he led police to the brown Intrepid. Later, on recross-examination, Guzman inquired about the half-brother's motivation for providing information about the robberies and whether he could be confused for Appellant in a lineup. That led to Detective Parsons explaining: "the information that he provided to us pointed towards the owner of the light brown Intrepid. And

9

when we interviewed the person that drove that, she implicated herself in the robbery as well as the defendant."

The next day, as the sentencing phase continued, the State recalled Detective Parsons to the stand. He authenticated a photograph of Appellant's half-brother, who was identified for the first time at trial by his name, Raul Mora. On cross, Guzman suggested that Mora looked "exactly like" Appellant, then challenged Detective Parsons about why he had not been considered a suspect. On recross, Guzman asked about Mora's criminal history, which included "a burglary record as of this year." Guzman also asked about Mora's juvenile record, but the witness was unable to remember the answers to all of the questions. Detective Parsons said he could answer if he had his computer, and that with a break he could go look for the information, return, and answer.

As soon as Detective Parsons was released from the stand and the State called its next witness, Guzman asked to approach the bench. Outside the hearing of the jury, Appellant's other trial lawyer, Rodriguez, stated: "Judge, I just want to let the Court know I represent Raul Mora currently and I don't know if it's going to be brought up." The trial judge responded: "You're just here assisting. Mr. Guzman is the attorney. If you feel like you got a problem, there's the door."

The State began examining its next witness. Guzman raised an evidentiary objection and asked to approach the bench. At the beginning of that bench conference, the trial judge stated: "Look here, look here, look here, Mr. Rodriguez, you're still here." Guzman asked, "You want him to go, Judge? Do you think he should go?" The judge responded: "It's up to him but I think he should look check with his office because he knows that the Public Defender's Office is . . . Just check on that. Now, look. . . . I don't know what's going on here and I don't want to have a problem on something like that at this point in the trial."

10

After the State rested, Guzman called Detective Parsons back to the stand. He testified that Mora was currently a fugitive from justice, under indictment for burglary of a habitation with an outstanding arrest warrant. The State asked no further questions, and the defense rested.

Based on these events, Appellant argues for the first time on appeal that his appointed counsel had an actual conflict of interest that adversely affected his defense. A claim of ineffective assistance of counsel may be based upon allegations that a criminal defense lawyer had a conflict of interest. *See Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App. 1997)(citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067 (1984)). "A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance." *Id*. (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 100 S.Ct. 1708, 1718-19 (1980)).

"An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Id*. "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as 'eliciting (or failing to elicit) evidence helpful to one [interest] but harmful to the other.'" *Ex parte Alvarez*, No. 08-13-00025-CR, 2015 WL 363571, at *7 (Tex.App.—El Paso Jan. 28, 2015, pet. ref'd)(not designated for publication)(quoting *Gaston v. State*, 136 S.W.3d 315, 318 (Tex.App.—Houston [1st Dist.] 2004, pet. struck)(en banc)). "To prove adverse effect, a defendant does not have to show that the conflict of interest changed the outcome of the trial." *Gaston*, 136 S.W.3d at 318. "He need demonstrate only that some plausible defense strategy or tactic might have been pursued, but was not, because of the conflict of interest." *Id*. "Once the

11

existence of an actual conflict has been established, prejudice to the appellant must be presumed." *Id.*; *see also Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996).

Appellant's argument that there was an actual conflict of interest is based on no more than his counsel's failure, in the guilt-innocence phase, to "make inquiry before the jury or suggest to the jury that Mora was, in fact, the actual robber." Appellant suggests that this "line of questioning did not manifest itself until punishment." However, Appellant identifies no specific instance where counsel was faced with a choice between alternative courses of action associated with divergent interests between himself and Mora. Indeed, the record does not reflect that there was any recognition by the defense team that the "half brother" first mentioned during the guilt-innocence stage was Mora, a client of Rodriguez. The first time Mora was identified by name, during the sentencing phase on the following day of proceedings, Rodriguez promptly notified the trial court of the relationship at the conclusion of Detective Parsons's testimony.

Moreover, the record does not reflect that it was ever a defense theory that Mora was the actual robber, either for the charged offenses or the extraneous offenses presented during sentencing, and on appeal Appellant identifies no evidence that he was. Rather, it was the consistent defense theme to criticize the quality of the police investigation and the fairness of the photographic lineups. At the close of the guilt-innocence phase, the defense challenged the credibility of the eyewitness identifications and the fairness of the line-up procedure, and counsel suggested the witnesses had been improperly influenced by police and prosecutors. At the close of sentencing, defense counsel returned to their attack on the investigation and the lineups.

We conclude that Appellant has failed to demonstrate that a potential conflict of interest, which only became apparent near the conclusion of the sentencing phase, rose to the level of an actual conflict of interest as the law requires to support an ineffective-assistance-of-counsel claim

12

under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708 (1980). *See Gaston*, 136 S.W.3d at 318; *Alvarez*, 2015 WL 363571, at *7; *see also Perillo*, 79 F.3d at 447. Consequently, we also reject Appellant's suggestion that the trial court was aware of an actual conflict that made it necessary to conduct a hearing to confirm whether the conflict had been validly waived. *See, e.g.*, *Gaston*, 136 S.W.3d at 321-22. We overrule Appellant's direct-appeal challenge based on ineffective assistance of counsel.

## IV.    Admission of hearsay during punishment phase

In his final issue, Appellant challenges the punishment-phase admission of hearsay contained within two exhibits which contained business records maintained by the El Paso Sheriff's Office. We generally review evidentiary rulings for abuse of discretion, and we will not find error in an evidentiary ruling unless it was outside the zone of reasonable disagreement. *See, e.g.*, *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex.Crim.App. 2009); *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex.App.—El Paso 2002, no pet.)(admission of evidence during punishment phase reviewed for abuse of discretion).

The last witness called by the State on the first day of Appellant's sentencing phase was a records custodian for the El Paso Sheriff's Office. The State offered into evidence as exhibits 26A and 26B records from the county jail where Appellant was held. The two exhibits contained over 350 pages, and defense counsel immediately observed that the exhibits were "voluminous" and that he would need time to review them. It was the end of the day, so the jury was excused and defense counsel was provided the opportunity to review the documents overnight.

The next morning, defense counsel stated that he had spent two hours reviewing the documents. Among other objections, counsel stated a general hearsay objection because the

13

documents included "a great deal of law enforcement reports." The trial court overruled the objection and admitted the exhibits.

On appeal, Appellant raises only his hearsay objection. He relies primarily on *Cole v. State*, 839 S.W.2d 798 (Tex.Crim.App. 1990), *clarified on reh'g* (1992), for the proposition that because matters "observed by law-enforcement personnel" are excepted from the hearsay exception for public records as applied in criminal cases, *see* TEX.R.EVID. 803(8)(A)(ii), those same matters are also excluded from the scope of the business-records hearsay objection, *see* TEX.R.EVID. 803(6). *See Cole*, 839 S.W.2d at 810-11 (applying former TEX.R.EVID. 803(6) & (8)). Appellant thus argues that he was prejudiced by the admission of disciplinary reports from the jail and documents reflecting that he was charged with various other crimes.

The State's primary response is to distinguish *Cole* as a case that dealt with the admission of evidence during the guilt-innocence stage of trial, while Appellant's complaint relates to evidence offered during his sentencing phase. The State contends that Code of Criminal Procedure article 37.07, section 3(a)(1) provides for a wider scope of admissibility during the sentencing phase of a criminal trial, including "any matter the court deems relevant to sentencing." *See also* TEX.R.EVID. 101(d)("Despite these rules, a court must admit or exclude evidence if required to do so by . . . a federal or Texas statute, or a rule prescribed by . . . the Texas Court of Criminal Appeals.").

"When determining the admissibility of evidence under article 37.07, a court must be guided by the language of its provisions." *Haley v. State*, 173 S.W.3d 510, 514 (Tex.Crim.App. 2005). The statute specifically authorizes the admission of punishment evidence "of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has

14

previously been charged with or finally convicted of the crime or act." TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1). The statute governing the admission of evidence during punishment hearings does not exclude hearsay. *See id.*

Appellant's argument does not contend that exhibits 26A and 26B were not relevant to sentencing; he merely objects, generally, that the hundreds of pages admitted into evidence contained hearsay. To the extent Appellant also suggests, again generally, that information in the exhibits was prejudicial to him, he did not argue at trial and does not now argue on appeal that a factfinder could not find beyond a reasonable doubt that the extraneous crimes or bad acts were committed by him. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1); *Arzaga*, 86 S.W.3d at 781. We overrule Appellant's general objection to hearsay contained within voluminous jail records offered into evidence during the punishment phase of his trial. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1).

**Conclusion**

Having considered Appellant's arguments and having found no reversible error, we affirm the judgment of conviction on two counts of aggravated robbery.

October 18, 2019

MICHAEL MASSENGALE, Former Justice

Before Rodriguez, J., Palafox, J., and Massengale, Former Justice
Massengale, Former Justice (Sitting by Assignment)

(Do Not Publish)

15